MICHIGAN PIPE CO. et al. v. FREMONT DITCH, PIPE LINE & RESERVOIR CO. et al.

(Circuit Court of Appeals, Eighth Circuit. October 7, 1901.)

No. 1,504.

1. EQUITY—COMPLAINANT MUST COME WITH CLEAN HANDS.

A court of equity will leave to his remedy at law—will refuse to interfere to grant any relief to—one who, in the matter or transaction concerning which he seeks its aid, has been guilty of bad faith, unrighteous dealing, or unconscionable acts.

2. SAME.

Courts of equity will not entertain bills to enforce forfeitures, but will leave the parties to their remedies at law.

3. SAME—COMPLAINANTS BARRED BY UNCONSCIONABLE ACTS.

Vendors sold and conveyed real property, water rights, and rights of way under a contract whereby the vendees agreed to pay the purchase price provided the vendors first paid off and satisfied the incumbrances upon the property, and whereby the vendees also agreed to retransfer the property if they failed to construct waterworks according to the provisions of a certain ordinance. They constructed the waterworks under other ordinances substantially but not completely in accordance with the provisions of the ordinance mentioned in the contract. The vendors did not pay off the incumbrances, but, without notice of their failure, foreclosed them, took the title under the foreclosures, and sold the property to a third party. The vendees brought suits and obtained decrees avoiding these foreclosures, and adjudging that the title under them was held in trust, and should be conveyed to the vendees. Thereupon the vendors brought a suit in equity to compel a reconveyance of the property from the vendees to the vendors because they had not constructed the waterworks in exact accordance with the contract, and because they had not paid the purchase price. Held, the vendors were barred from relief in equity, and remitted to their remedies at law, by their bad faith, sharp practice, and unconscionable acts in foreclosing the mortgages they had agreed to pay.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Colorado.

On April 23, 1898, the complainants (the appellees here) exhibited their bill in the United States circuit court for the district of Colorado to compel the defendants (the appellants here) to reconvey to them certain land, water rights, and rights of way for a ditch and reservoirs pursuant to the terms of a contract of purchase thereof which had been made on January 27, 1893. The complainant the Fremont Ditch, Pipe Line & Reservoir Company was a corporation, which on January 27, 1893, owned this property, and the other complainants, J. C. Plumb, H. I. Reid, F. W. Howbert, H. C. McCreery, and S. H. Kinsley, owned the stock of this corporation, and also owned a large number of lots in the town of Cripple Creek, in the state of Colorado. The defendant the Michigan Pipe Company was a corporation, and the defendant Henry B. Smith practically controlled and acted for and with it. In December, 1892, one J. A. Jones had obtained from the town of Cripple Creek an ordinance granting to him the right to construct and maintain a system of waterworks in the town of Cripple Creek, and requiring him to locate 25 hydrants upon 3 miles of water mains within the limits of that town, and to complete his system by July 15, 1893, unless prevented by strikes, labor combinations, weather, or order of court of competent jurisdiction. The Fremont Company had 174 acres of land, certain water rights appurtenant thereto, and a right of way for a ditch, pipe line, and reservoirs, which the Michigan Company desired to obtain for the purpose of

constructing and maintaining this system of waterworks under the ordinance obtained by Jones, who was in fact the agent of this corporation. Thereupon the complainants other than the Fremont Company made a contract with the Michigan Company on January 27, 1893, which recited that they were the owners of the entire capital stock of the Fremont Company, that that company was the owner of the land, water rights, and rights of way which have been mentioned; that the Michigan Company had obtained through assignments from Jones the franchises to lay pipes and supply water to the towns of Cripple Creek and Fremont; that it was about to construct a pipe line and waterworks system to supply those towns over the course and rights of way of the Fremont Company; that, in consideration of the transfer by the complainants to the Michigan Company of this real estate subject to the incumbrances thereon, the latter company agreed to pay to the complainants other than the Fremont Company, not later than August 15, 1893, $5,000 of the first mortgage bonds and $5,000 of the capital stock of the company which should own and operate the waterworks system constructed under the franchises granted to Jones; that before the delivery of the stock and bonds the complainants other than the Fremont Company should pay off and satisfy all incumbrances on the property amounting to $1,400; and that, in case the Michigan Company should not construct the waterworks system under the franchises obtained by Jones, it should retransfer to the complainants other than the Fremont Company all the rights, real estate, and franchises obtained from them. The foregoing facts were conceded at the hearing, and the controversy was over the following averments of the parties: The complainants alleged in their bill that on February 13, 1893, the contract of January 27th was so modified that the Michigan Company agreed to immediately organize a corporation to own the waterworks, to dispose of its stock and bonds for cash, to pay the incumbrances upon the property out of the amounts realized from the $5,000 of stock and $5,000 of bonds owing to the complainants, and to remit to them the remainder of the proceeds of this stock and bonds; that thereupon the Fremont Company made a deed of the property in controversy, with full covenants against incumbrances, to Henry B. Smith, for the Michigan Company; that the Michigan Company proceeded to construct a pipe line and a system of waterworks to supply the town of Cripple Creek with water, but that it did not do so under the franchises granted to Jones; that, instead of placing within the corporate limits of Cripple Creek 3 miles of mains and 25 hydrants, it constructed less than 1 mile of water mains and no more than 12 fire hydrants; that instead of completing its system on July 15, 1893, as required by the ordinance in favor of Jones, it failed to finish the same until 1894; that the complainants paid all the incumbrances upon the property, but that the defendants never paid to the complainants the $5,000 in the first mortgage bonds or the $5,000 in the capital stock of the corporation which was to be organized to own and operate the system of waterworks referred to in the contract; that the failure of the Michigan Company to comply with the contract of January 27, 1893, as modified, inflicted great and irreparable damage upon the complainants, and they prayed that the defendants might be required to reconvey to them all the property which had been transferred to Henry B. Smith by the deed of February 13, 1893. In answer to this bill the defendants denied that there was ever any modification of the contract of January 27, 1893, whereby they undertook to sell the stock and bonds owing to the complainants, or to pay the incumbrances upon the property conveyed to Henry B. Smith by the deed of February 13, 1893. They denied that they ever agreed to form a corporation immediately after the execution of this deed, or at any time before the waterworks system was completed. They averred that the agreement was that the stock and bonds owing to the complainants should not be delivered until the complainants had paid off the incumbrances against the property referred to in the contract. They alleged that, while they had not constructed the waterworks under the franchises granted to Jones in 1892, the towns of Fremont and Cripple Creek were consolidated in May, 1893, under the name of the town of Cripple Creek; that thereafter they obtained a franchise from this town for the purpose of preserving the rights originally granted to Jones;

and that the Michigan Company complied with the terms of this franchise in the erection and completion of its waterworks. They alleged as another defense to the bill' that the complainants, in violation of their contract, caused two foreclosure sales of the property in question to be made to satisfy the notes secured by the trust deeds which constituted the incumbrances which the complainants other than the Fremont Company agreed to pay and discharge by the terms of the contract of January 27, 1893; that in consequence of these acts the Michigan Company had been compelled to bring two suits in equity for the purpose of removing the clouds thus placed upon its title; and that it had actually been damaged by these foreclosures in the sum of $10,000. In view of these facts the defendants prayed that the bill of the complainants might be dismissed, that the rights of the parties under the contract might be determined by the court, and that the Michigan Company might recover damages of the complainants in the sum of $5,000.

Upon the issues formed by these pleadings the evidence was conflicting, but the result of it all was that the following facts were established: The contract of January 27, 1893, though dated on that day, was not completed and delivered until February 13, 1893, when the deed of the property from the Fremont Company to Smith, with full covenants against incumbrances, was delivered. The contract and the deed alike required the complainants to pay the incumbrances upon the property conveyed before they were entitled to the stock and bonds of the corporation to be organized by the defendants. The oral testimony in the case, to the effect that there was a verbal agreement made at the time of the delivery of these instruments to the effect that the plaintiffs should not pay, and the defendants should pay, these incumbrances, is in conflict with the written agreements, and is insufficient to prove their modification. So the contract stood that the complainants were to pay the incumbrances before they were entitled to the stock and the bonds. When the contract was made they represented that the aggregate amount of these incumbrances was $1,400, consisting of two trust deeds, one securing a note of $800 due July 1, 1894, and the other securing a note of $600 due March 1, 1893. The fact was that the incumbrances amounted to $1,900. The trust deed securing the note for $600 also secured another for $500. In 1895 the complainants caused both these trust deeds to be foreclosed, bid in the property for themselves, and sold and conveyed it to the town of Cripple Creek for the sum of $26,500 in warrants of that town. On July 13, 1895, the Michigan Company filed a bill in the United States circuit court against the town of Cripple Creek and the complainants in this suit to set aside the foreclosure of the trust deed which secured the note for $800; and on July 23, 1896, a decree for that relief was granted by the court below, and the town of Cripple Creek was directed to convey the property by a good and sufficient deed to the Michigan Company. On July 15, 1896, the Michigan Company filed another bill in the court below to avoid the trustee's sale under the deed which secured the payment of the two notes for $600 and $500, and at the hearing a decree was rendered avoiding that foreclosure and declaring the property free and clear of the incumbrance of the trust deed under which it was made. The defendants necessarily incurred and paid large amounts of money for witnesses' fees, traveling expenses of attorneys and witnesses, and services of counsel in prosecuting these suits to favorable decrees. The Michigan Company did not construct 3 miles of water mains in the town of Cripple Creek, but it laid about 2½ miles, and it erected 25 hydrants. It did not do this, however, under the franchises to J. A. Jones, but under the subsequent franchise obtained from the town of Cripple Creek in 1893. It did not lay all these mains nor erect these hydrants before July 15, 1893, but some of them were laid and erected in 1894. The system of waterworks was not completed until December in the latter year. The complainants never before the commencement of this suit made any complaint to the defendants, or any objection to the performance of the contract on the ground that the length of the mains or the number of the hydrants was less than that specified in the agreement. They commenced the foreclosure of one of the trust deeds in July, 1895. They never notified the defendants of either of the foreclosures, or of their inten-

tion to commence them, until after they began them. They never notified the defendants before July, 1895, that they deemed the contract forfeited, or that they would seek to enforce a forfeiture or reconveyance of the rights which they had conveyed to the Michigan Company under it. On the other hand, they had repeatedly demanded the payment of the stock and the bonds, and they had threatened a suit for damages for a failure to deliver them. In this state of the proofs, the court below rendered a decree that the complainants should recover of the defendants the sum of $5,000, interest from June 1, 1895, and the costs of the suit. The defendants appealed from this decree.

Charles M. Brown, for appellants.

John W. Sheafor (Joseph W. Ady, on the brief), for appellees.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

A suit in equity is an appeal for relief to the moral sense of the chancellor. A court of equity is the forum of conscience. Nothing but good faith, the obligations of duty, and reasonable diligence will move it to action. Its decree is the exercise of discretion,—not of an arbitrary and fickle will, but of a wise judicial discretion, controlled and guided by the established rules and principles of equity jurisprudence. One of the most salutary of these principles is expressed by the maxims, "He who comes into a court of equity must come with clean hands," and "He who has done iniquity cannot have equity." A court of equity will leave to his remedy at law—will refuse to interfere to grant relief to—one who, in the matter or transaction concerning which he seeks its aid, has been wanting in good faith, honesty, or righteous dealing. While in a proper case it acts upon the conscience of a defendant, to compel him to do that which is just and right, it repels from its precincts remediless the complainant who has been guilty of bad faith, fraud, or any unconscionable act in the transaction which forms the basis of his suit. 1 Pom. Eq. Jur. §§ 397, 398, 400; Medicine Co. v. Wood, 108 U. S. 218, 227, 2 Sup. Ct. 436, 27 L. Ed. 706; Marble Co. v. Ripley, 10 Wall. 339, 357, 19 L. Ed. 955.

How can the complainants in this case sustain their decree in the face of this indisputable rule? They sold and conveyed the property in controversy to the defendants on February 13, 1893, for the purpose of enabling them to lay water mains, to construct reservoirs upon it, and to use it to operate a system of waterworks for the town of Cripple Creek; and they agreed that their payment of the incumbrances upon it, which actually amounted to $1,900, although they were represented to be only $1,400, should constitute a condition precedent to their right to the receipt of the purchase price. The defendants undertook to construct the works and to deliver to the complainants on or before August 15, 1893, the bonds and stock to the amount of $10,000, on condition that the complainants first paid off and satisfied the incumbrances upon the property which they bought. They built the waterworks over, and operated them by the use of, the property conveyed to the Michigan Company. They

failed to complete them until about 17 months after they had agreed to finish them. They laid only about 2½ miles of water mains, while they had contracted to lay 3 miles. But the differences between promise and performance in the construction and operation of the works were so slight and insubstantial that the plaintiffs never mentioned or objected to them in the course of a long correspondence, continuing more than a year, in which they often demanded the delivery of the stock and the bonds and the completion of the purchase. The defendants never delivered either the stock or the bonds. The complainants never satisfied or removed the incumbrances upon the property. On July 1, 1895, this property had been enhanced in value by the construction and operation of the waterworks and the growth of the town until it was worth three times its value when the Fremont Company conveyed it to Smith in February, 1893. Meanwhile the complainants had given no notice to the defendants that they claimed a forfeiture of their rights or a retransfer of the property on the only ground upon which they were entitled to it under the terms of the contract,—because the defendants had not constructed the system of waterworks in accordance with the terms of the franchises granted to J. A. Jones. On the other hand, they repeatedly demanded payment of the purchase price, and had threatened an action for damages if the payment was not made, thus affirming the sale, although they knew that the works had been built, and that they had been constructed under the franchise granted in 1893, and not under those evidenced by the ordinances of 1892 in favor of Jones. This was the situation of the parties and of the property in July, 1895. In this state of the case the defendants caused the trust deeds which they had agreed to pay off and to satisfy to be foreclosed, sold the title which they acquired under these foreclosures to the town of Cripple Creek for $26,500, and compelled the defendants to incur the expense of two suits in equity to remove the clouds of these proceedings from their title. After the decrees had been rendered to the effect that these foreclosures were illegal, and that in equity and good conscience the title taken under them was held in trust for, and must be conveyed to, the Michigan Company, the complainants instituted this suit, and prayed a court of equity to retransfer to and vest in them.the title to all this property, worth three times its value in 1893, because the defendants had not constructed the works in exact accordance with the terms of the grant to Jones, and because they had not paid the purchase price. Could effrontery go further? The payment and satisfaction of the incumbrances by the complainants was a condition precedent to their right to a payment of the purchase price of the property by the terms of their contract. They gave the defendants no opportunity to pay these mortgages, no notice that they had not paid them, no notice that they would not discharge them. Without notice of their failure to perform their part of the agreement, they sought to take advantage of their own wrong to rob the defendants of the property which they had purchased, and of that portion of the waterworks which they had placed upon it. They undertook to do this so secretly that the defendants should not become aware

of their purpose or of their proceedings until it would be too late for them to redeem from the incumbrances. They succeeded in effecting formal foreclosures of the two trust deeds, and in entailing upon the defendants the burden and expense of two suits in equity to avoid them. Their course of action constituted a bold endeavor to appropriate to themselves property of the defendants of the value of at least $20,000 by taking advantage of their own wrong,—by concealment, bad faith, and sharp practice. They failed in their endeavor, and this suit was an appeal to a court of equity to grant to them the same thing which they vainly sought to obtain by trickery and stealth. Their breach of good faith, their unconscionable attempt to take from the defendants their rights in this property by stealth and sharp practice, closed the doors of all courts of equity against their application for the relief sought in this suit, and perpetually repelled them from their precincts. They were perpetually barred by their own acts from obtaining any relief from a court of equity against the defendants relating to this property, or to the contract of the parties evidencing its sale.

The complainants are entitled to no relief in this suit for another reason. Their bill is an application to enforce a forfeiture, and that relief is never granted by a court of equity. The contract was an agreement of sale of the property, with a stipulation that, if the vendee failed to construct the waterworks under the franchises to Jones, it should reconvey the land, water rights, and rights of way for the ditch and reservoirs to the vendors. This was, in effect, a provision that the vendee should forfeit all its rights to the property if it failed to comply with the grants to Jones. The purpose and prayer of the complainants' bill is to enforce this forfeiture. They seek to enforce it for insubstantial failures to comply with the terms of the agreement, when the great desideratum of the contract, the system of waterworks for the town of Cripple Creek, has been obtained, when the property has been greatly enhanced in value by the labor and expenditures of the vendee, and when the provisions of the ordinances in favor of Jones have been substantially, though not exactly, complied with. Courts of equity uniformly decline to interfere to enforce forfeitures in such cases, and leave the complainants to their remedies at law.   1 Pom. Eq. Jur. § 459.

It is said that, although the complainants were not entitled to the specific relief for which they prayed, yet this was a case of equitable cognizance,—a suit for the specific performance of a contract,—and that the court, having obtained jurisdiction of the subject-matter, was warranted in investigating and determining the rights of the parties under their contract of sale, and in rendering a decree or a judgment for the recovery of damages according to the very right of the matter. The position is well taken, and its soundness is conceded. The answer to it is that under the proofs in this case, and according to the very right of the matter, the complainants are barred from any relief in equity by their bad faith, concealment, and sharp practice in their dealing with the subject-

111 F.—19

matter of the suit, under the maxim that he who comes into a court of equity must come with clean hands.

Finally, this is not a case in which the title to the property sold should be transferred or conveyed back to the vendors, but it is one in which the legal injuries of the respective parties may be and should be compensated by damages. It is a case, therefore, peculiarly appropriate for disposition by one or more actions at law. This fact is emphasized by the objection strenuously urged by the complainants that the claim of the defendants to recover the expenses which they incurred in the suits to avoid the foreclosures cannot be considered in equity, because this claim is the basis of a cause of action at law. The objection may not be tenable, but in an action at law the claims of all the parties to the damages which they have suffered can be presented and tried upon their merits, while these claims cannot be considered in this suit in equity, because the plaintiffs are barred from all relief here by their own unconscionable acts.

The decree below will accordingly be reversed, and the case will be remanded to the court below, with directions to dismiss the bill without prejudice to the right of any party to the suit to litigate in any action at law any of the questions of law or of fact in issue in this suit. It is so ordered.