WELLSVILLE OIL CO. v. MILLER *et al.*

No. 3785.  Opinion Filed December 22, 1914.

(145 Pac. 344.)

1. **EQUITY—Clean Hands—Petition—Oil and Gas Lease.** Where the alleged cause of action set out in a petition in a suit in equity shows that the right or claim relied upon for relief is based upon a breach of a contractual obligation existing between the parties thereto, the plaintiff in such suit does not come into court with clean hands, and a general demurrer to the petition for want of equity is well taken and should be sustained.

2. **MINES AND MINERALS—Oil and Gas Lease—"Condition Subsequent"—"Condition Precedent."** A condition subsequent operates upon estates already created and vested, and renders them liable to be defeated; while a condition precedent is one that must be performed before the estate can vest or be enlarged. A void condition subsequent in a lease contract cannot operate to defeat an estate already vested thereunder, but a void condition precedent prevents any estate from vesting and renders the lease void, unless the condition is performed.

3. **INDIANS—Oil and Gas Lease—Condition Precedent—What Constitutes.** In the year 1907, upon the petition of the guardian of a minor full-blood allottee, the United States Court for the the Northern District of the Indian Territory, sitting in equity, made an order directing the minor to join in executing an oil and gas mining lease upon the ward's allotment upon condition that the lease should be approved by the Secretary of the Interior. **Held,** that this condition requiring the approval of the Secretary of the Interior was a condition precedent in the lease contract, and no estate vested thereunder until this condition was performed, although the condition may have been void.

(Syllabus by Galbraith, C.)

*Error from District Court, Rogers County;*

*T. L. Brown, Judge.*

Action by the Wellsville Oil Company against Martha Miller and another. Judgment for defendants, and plaintiff brings error.  Affirmed.

*Jas. A. Veasey, Lloyd A. Rowland, L. G. Owen,* and *Samuel W. Hayes,* for plaintiff in error.

*Hurley, Mason & Semor, Tillotson & Elliott, A. C. Hough,* and *W. J. Gregg,* for defendants in error.

Wellsville Oil Co. v. Miller et al.

Opinion by GALBRAITH, C. This was a suit in equity commenced by the plaintiff in error against the defendants in error for the purpose of validating an oil and gas lease which it held on 80 acres of Martha Miller's allotment, and to cancel a like lease held on said land by the Alpha Oil Company. There was a demurrer to the petition, which was sustained. The plaintiff in error refused to amend, and judgment was entered for the defendants in error. To review this judgment the plaintiff in error has perfected an appeal to this court.

The assignments of error are considered in the brief and argument as one; to wit, that the trial court erred in sustaining the demurrer to the petition.

The petition was in two counts. In the first count it was alleged that the plaintiff originally had an oil and gas mining lease on 80 acres of the allotment of Martha Miller (*nee* Everett), a full-blood minor of the Cherokee Nation, which expired with her minority on March 16, 1908; that in February, 1907, more than a year before the allottee reached her majority, she, by her guardian, filed a petition in the United States District Court for the Northern District of the Indian Territory. It does not appear from the petition, but the record shows, that this petition was filed in equity, although the allottee's guardianship case was pending on the probate docket of said court at that time. The allottee asked in this petition that she, by her guardian, be authorized to enter into a new lease with the Wellsville-Oil Company for a term of fifteen years, which lease would run fourteen years beyond her minority; that the execution of this new lease was necessary in order to protect her property; that the Wellsville Oil Company, under its lease, had drilled seventeen wells upon her property, fifteen of which were producing oil wells, and that said company, owing to the shortness of the term to run under its lease, were crowding the pumps and operating the same at full capacity for 24 hours each day, and were draining the land of oil; that the price of oil was abnormally low, and that if she was authorized to enter into a

new lease this company would cease its strenuous operation, and she would therefore be saved irreparable loss; that this petition was by the court referred to a master in chancery, who took testimony and reported to the court, recommending the new lease as prayed for in the petition; that upon the filing of this report the court made an order authorizing and directing the guardian to join the minor allottee in executing a new oil and gas mining lease to the Wellsville Oil Company, and that, in compliance with this order, such lease was made, attaching a copy thereof to the petition; that a bonus of $1,600, as provided in the lease, had been deposited in the Union Bank & Trust Company of Chelsea, Indian Territory, and that on the 24th day of July, 1907, the guardian filed his report showing the making of the lease, and that the court in all things confirmed the execution of the lease in an order approving the report, a copy of the order being attached to the petition; that the Wellsville Oil Company entered into the possession of the land, tendered the bonus to the minor allottee, and, upon her refusal to accept it, tendered the same in court for her use and benefit; that the Alpha Oil Company claimed an interest in the land covered by plaintiff's lease by virtue of a lease executed subsequent to the date of the Wellsville Oil Company's new lease; that, notwithstanding the condition in the order of the United States District Court authorizing the new lease that it should be approved by the Secretary of the Interior, there was no law to justify this condition, and it was therefore of no legal force and effect; that the order of said court alone made said lease a binding obligation; that the allottee, after she reached her majority, in disregard of her lease to the Wellsville Oil Company approved by the United States Court for the Western District of the Indian Territory, had executed another lease covering the same land to the Alpha Oil Company, and, acting under that lease, the said Alpha Oil Company had dispossessed the plaintiff and interfered with its development of the land; and further alleging that the defendants were incapable of responding in damages, and that the plaintiff had no plain, speedy, or adequate remedy at law. In

the second count it was alleged that on the 18th day of March, 1908, the date upon which the new lease became effective, the plaintiff was in the peaceable possession of the premises, and continued for many months thereafter, when the Alpha Oil Company fraudulently obtained possession of the premises and withheld the same from the plaintiff until July or August, 1910, when it abandoned the lease, and the plaintiff thereupon again took possession, and has since been operating the oil lease thereon; that it placed improvements thereon to the amount of $8,000, and has expended $2,500 in caring for and in the production of oil on said lease, and prays that its new lease may be declared valid, and that the defendant be enjoined from interfering with the operation thereof, and that the lease to the Alpha Oil Company be vacated, and that, if it be decreed that the plaintiff's lease is not valid, it be reimbursed for necessary and proper expenses incurred while operating under its lease, and for the value of the improvements placed on the premises.

The order made on the 7th day of June, 1907, by the United States Court for the Northern District of the Indian Territory, sitting in equity, in response to the petition of the guardian filed therein, was as follows: .

"Comes now Calvin Everett, guardian of the above-named minor, and the matter of the petition of said guardian to be authorized to execute a lease upon the allotment of said minor coming on in its order to be heard, the court, being satisfied in the premises from the verified petition of said guardian and the testimony in support thereof, finds:

"First. That said minor was born on the 17th day of March, 1890, and that her minority will extend but for the period of about one year and one month..

"Second. That on the 5th day of April, 1905, under the proper order of court, a lease for oil and gas mining purposes was executed on the allotment of said minor to Sidney R. Bartlett and Edward H. Smith, of Independence, Kan., which said lease has been subsequently assigned to the Wellsville Oil Company, of Wellsville, N. Y., with the approval of the Secretary of the Interior.

"Third. That since the approval of said original lease said

Wellsville Oil Company has drilled 17 oil wells on the allotment of said minor, all but 2 of which are producing wells.

"Fourth. That, owing to the fact that said lease is to endure for such a short time, said Wellsville Oil Company is pumping said producing wells both day and night to such an excessive and unreasonable extent that the greater part of the oil underlying said land will be exhausted by the time said lease terminates.

"Fifth. That the price now paid for crude petroleum is so low that it is not to the interest of the estate of said minor to have said oil produced in the quantities now being done, but that said oil should be pumped in the usual and normal manner, so that the production from said wells shall extend over a considerable period, and said minor receive the benefit of such advance in price as she may obtain in the case of crude oil.

"Sixth. That said Wellsville Oil Company is willing to discontinue the unusual and excessive pumping of oil from said land, provided it receives a lease for oil and gas mining purposes to continue for fifteen years on the lands of said minor, for which new and additional lease said company will pay an additional royalty of $2\frac{1}{2}$ per cent, or $12\frac{1}{2}$ per cent. in all, and a bonus of $20 an acre, which said additional royalty and bonus are reasonable in view of all the circumstances in the case.

"Seventh. That the making of a lease on the allotment of said minor under the terms hereinbefore set out would be to the advantage of the estate of said minor, and great and irreparable loss would result to said estate, were said proposition not to be accepted.

"It is therefore considered, ordered, and adjudged by the court that Calvin Everett, guardian of the person and estate of the above-named minor, Martha Everett, be, and he is hereby authorized and empowered to join with said Martha Everett in the execution of an oil and gas mining lease on the allotment of said Martha Everett to the Wellsville Oil Company, a corporation of Wellsville, N. Y., which said lease shall be executed in conformity with the regulations of the Secretary of the Interior, reserve a royalty of $12\frac{1}{2}$ per cent., continue for fifteen years from its date, and for which lease the guardian shall receive a bonus of $20 an acre for the use and benefit of said minor, which said bonus shall be deposited in the Union Bank & Trust Company, of Chelsea, I. T., there to be and remain in escrow until the approval of said lease by the Secretary of the Interior, at which time the same shall be paid to said guardian for the use aforesaid.

Wellsville Oil Co. v. Miller et al.

"It is further ordered and adjudged by the court that, upon the approval of the lease herein authorized by the Secretary of the Interior, the lease hereinbefore authorized by the court and the order of the court authorizing the same, as well as the order of court confirming the same, on April 5, 1905, stand vacated and be of no further force or effect.

"It is further ordered and adjudged by the court that said guardian shall, upon the execution of said lease, make a full report of his doings in connection therewith, and that upon receiving said bonus of $20 an acre that he execute to the United States of America an additional bond in the sum of $3,200, conditioned for the faithful accounting of the proceeds of said lease."

On the 24th day of July following, the court made a further order concerning the lease:

"On the 24th day of July, 1907, comes on to be heard the report of Calvin Everett, guardian and next friend of Martha Everett, relative to leasing the lands of said minor unto the Wellsville Oil Company, and the court, being sufficiently advised, finds that the said guardian has fully complied with the court's order in the execution of such lease, and that he has filed a bond in the sum of $3,200, conditioned as required by law.

"It is therefore ordered that said lease and said bond be, and they are hereby approved, ratified, and confirmed.

"Done at Nowata in open court."

In pursuance of the order of June 7th, above set out, the guardian and ward joined in executing a lease for the term of fifteen years. This lease was on a form prescribed by the Secretary of the Interior for oil and gas leases on restricted Indian lands, and contained all of the usual recitals, giving the Secretary direction and control of the development to be made thereunder, and this lease was submitted in regular order for the approval of the Secretary as provided in the court's order above set out. This appears from the following indorsement thereon:

"Department of the Interior, U. S. Indian Service. Union Agency, Muskogee, Ind. T., Oct. 3, 1907. The within lease is forwarded to the Commissioner of Indian Affairs with recommendation that it be approved. See my report of even date.

"Department of the Interior, Office of Indian Affairs, Washington, D. C., Oct. 22, 1907. Respectfully submitted to the Secretary of the Interior with recommendation that it be

approved subject to regulations of June 11, 1907, as. amended October 14, 1907, and Department letter of September 26; 1907, (5-34)

"C. F. Larrabee, Acting Commissioner.

"Department of the Interior, Washington, D. C., Nov. 6, 1907.   Disapproved.

"Jesse E. Wilson,
*"Assistant Secretary of the Interior."*

It is contended by the plaintiff in error that the United States Court for the Northern District of the Indian Territory, sitting in equity, had jurisdiction to make the order above set out, authorizing the guardian to execute this new lease, extending beyond the minority of the allottee, and that the order made approving the lease made it a legal and binding obligation without the approval of the Secretary of the Interior.   Upon thorough investigation of the authorities we seriously doubt the jurisdiction of that court in equity to make the above order, for the reason:   First, we know of no statute conferring the jurisdiction; and, second, for the reason there was no necessity to apply to the chancellor in this instance, since that court had jurisdiction of the guardianship of this minor allottee and the management of her estate in the probate cause pending before it, and no good reason appears why the guardian should not have invoked the court's probate jurisdiction in the guardianship case for authority to execute the same; and for the further reason that section 20 of the act of Congress of April 26, 1906 (34 St. at L. 145, c. 1876), conferring power upon the United States Courts in the Indian Territory to provide for leasing the allotments of minors and incompetents, was not an act removing restrictions, and did not take away from the Secretary of the Interior control over the alienation of the lands of adult full bloods.   However, inasmuch as this court, in *Cowles v. Lee et al.,* 35 Okla. 159, 128 Pac. 688, has used language that might be interpreted to mean that, in the opinion of this court, the power of that court to make the order was in

chancery as well as in probate, we will assume for the purpose of this case that the court had the jurisdiction contended for by the plaintiff in such a case properly brought before it.

2. The first question presented by the demurrer to the petition and raised by the assignments under consideration is: Were there sufficient equities stated in the petition to justify the court in granting the relief prayed for? If a negative answer is returned to this question, the ruling of the trial court complained of was correct, and should be sustained. It will be observed that the cause of action in the instant case is based wholly upon the pleadings, orders, and judgment of the United States Court of the Indian Territory relied upon as authority for the plaintiff in error's lease involved in this case. All these are set out and made a part of the petition in the instant case, and their construction thereby invited. A consideration of the power of the court to make the order and decree relied upon as authorizing the lease is necessarily involved in answering the question above suggested.

It is contended by the defendants in error that the plaintiff in error does not come into court with clean hands, and for that reason was properly denied relief in the trial court.

Mr. Pomeroy, in his Equity Jurisprudence (volume 1, par. 397), says:

"On the other hand, the maxim now under consideration, 'He who comes into equity must come with clean hands,' is much more efficient and restrictive in its operation. It assumes that the suitor asking the aid of a court of equity has himself been guilty of conduct in violation of the fundamental conceptions of equity jurisprudence, and therefore refuses him all recognition and relief with reference to the subject-matter or transaction in question. It says that whenever a party who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine;* the court will refuse to interfere in his behalf, to acknowledge his right, or to award him any remedy."

And in paragraph 398 this author says:

"Whatever may be the strictly accurate theory concerning the nature of equitable interference, the principle was established from the earliest days that, while the court of chancery could interpose and compel a defendant to comply with the dictates of conscience and good faith with regard to matters outside of the strict rules of the law, or even in contradiction of those rules, while it could act upon the conscience of a defendant and force him to do right and justice, it would never thus interfere on behalf of the plaintiff whose own conduct in connection with the same matter or transaction has been unconscientious or unjust, or marked by want of good faith, or has violated any of the principles of equity and righteous dealing which it is the purpose of the jurisdiction to sustain. While a court of equity endeavors to promote and enforce justice, good faith, uprightness, fairness, and conscientiousness on the part of the parties who occupy a defensive position in judicial controversies, it no less stringently demands the same from the litigant parties who come before it as plaintiffs or actors in such controversies. This fundamental principle is expressed in the maxim, 'He who comes into a court of equity must come with clean hands;' and, although not a source of any distinctive doctrines, it furnishes a most important and even universal rule affecting the entire administration of equity jurisprudence as a system of remedies and remedial rights."

Judge Sanborn, in rendering the opinion of the Circuit Court of Appeals, in the *Michigan Pipe Co. et al. v. Fremont Ditch Pipe Line & Reservoir Co. et al.,* 111 Fed. 284, at page 287, 49 C. C. A. 324, at page 327, said:

"A suit in equity is an appeal for relief to the moral sense of the chancellor. A court of equity is the forum of conscience. Nothing but good faith, the obligations of duty, and reasonable diligence will move it to action. Its decree is the exercise of discretion; not of an arbitrary and fickle will, but of a wise judicial discretion, controlled and guided by the established rules and principles of equity jurisprudence. One of the most salutary of these principles is expressed by the maxims, 'He who comes into a court of equity must come with clean hands,' and 'He who has done iniquity cannot have equity.' A court of equity will leave to his remedy at law—will refuse to interfere to grant relief to—one who, in the matter of transaction concerning which he seeks its aid, has been wanting in good faith,

honesty, or righteous dealing. While in a proper case it acts upon the conscience of a defendant to compel him to do that which is just and right, it repels from its precincts remediless the complainant who has been guilty of bad faith, fraud, or any unconscionable act in the transaction which forms the basis of his suit. 1 Pom. Eq. Jur. 397, 398, 400; *Medicine Co. v. Wood,* 108 U. S. 218, 227, 2 Sup. Ct. 436, 27 L. Ed. 706; *Marble Co. v. Ripley,* 10 Wall. 339, 357, 19 L. Ed. 955."

It seems, under the allegations of the petition and the findings of the court in the order of June 7th, that the guardian and the minor allottee were driven into court with the petition for authority to make the new lease by reason of the manner in which the Wellsville Oil Company was operating its first lease; the court finding on this point that its manner of operating was "to such an excessive and unreasonable extent that the greater part of the oil underlying said land will be exhausted by the time the lease terminated," and that "the unusual and excessive pumping would result in great and irreparable loss to the estate." It seems from these findings that the plaintiff in error "was wanting in good faith, honesty, and righteous dealing," and that it had breached its duty and violated its contract obligation, and thereby forced the guardian to petition for authority to make the new lease.

It was said by Mr. Justice Van Devanter, in rendering the opinion of the Circuit Court of Appeals, in *Brewster v. Lanyon Zinc Co.,* 140 Fed. 801, 72 C. C. A. 213, in regard to the mutual obligations assumed in an oil lease:

"In the absence of some stipulation to that effect, we think an oil and gas lease cannot be said to make the lessee the arbiter of the extent to which, or the diligence with which, the exploration and development shall proceed. * * * The object of the operations being to obtain a benefit or profit for both lessor and lessee, it seems obvious, in the absence of some stipulation to that effect, that neither is made the arbiter of the extent to which or the diligence with which the operations shall proceed, and that both are bound by the standard of what is reasonable. This is the rule of all other contracts where the time, mode, or quality of performance is not specified, and no

reason is perceived why it should not be equally applicable to oil and gas leases."

And again, in the course of the same opinion, it is said:

"Whatever, in the circumstances, would be reasonably expected of operators of ordinary prudence having regard to the interests of both lessor and lessee, is what is required. A plain and substantial disregard of this requirement constitutes a breach of the covenant for the exercise of reasonable diligence, which, as before shown, is also made a condition of the lease under consideration."

It follows from this rule that a plain and substantial disregard of its duty to operate the lease in such a manner as would be reasonably expected of operators of ordinary prudence, having regard to the interests of both the lessor and lessee, would be a breach of its contract, and that this obligation might be violated as much by a too strenuous as by a too dilatory operation of the lease. Both the petition of guardian and the order of the court show a flagrant violation of this duty in the manner of operating the first lease. Then it seems that the ground upon which the Wellsville Oil Company forced the guardian and the allottee into a court of equity to obtain the authority for executing a new lease was a breach of its plain obligation to the minor allottee under its first lease with her. This being true, the plaintiff in error does not appeal to the conscience of the chancellor with "clean hands," and cannot invoke the powers of a court of equity for its relief. The very right of action set out in the first count of the petition in the instant case is based upon the breach of duty, the wrongful operation of the first lease, its own iniquity. The principle that no one can take advantage of his own wrong, much less found a right of action thereon, is as old as jurisprudence itself. "He who comes into a court of equity must come with clean hands," and "He who has done iniquity cannot have equity." The record shows that the plaintiff not only came into court with unclean hands, but had been guilty of iniquity as well, and the trial court properly denied it relief.

3. Again, in the court's order authorizing the lease to be made, it is provided that the guardian "be, and he is hereby, authorized and empowered to join with the said Martha Everett in the execution of an oil and gas mining lease on tne allotment of said Martha Everett, to the Wellsville Oil Company, * * * which said lease shall be executed in conformity with the regulations of the Secretary of the Interior, reserve as royalty, * * * and for which lease the guardian shall receive a bonus of $20 an acre, * * * which said bonus shall be deposited in the Union Bank & Trust Company, of Chelsea, I. T., there to be and remain in escrow until the approval of said lease by the Secretary of the Interior at which time the same shall be paid to said guardian for the use aforesaid." The order further provided "that, upon the approval of the lease herein authorized by the Secretary of the Interior," the present lease under which the allottee held the premises should be vacated, and also that said "guardian shall, upon the execution of said lease, make a full report of his doings in connection therewith, and that, upon receiving said bonus of $20 an acre, he execute to the United States of America an additional bond in the sum of $3,200, conditioned for the faithful accounting of the proceeds of said lease."

We cannot agree with the contention of the plaintiff in error that this provision in the order authorizing the lease providing that it should be subject to the approval of the Secretary of the Interior, and should be executed in accordance with the rules and regulations prescribed by him, and directing the guardian to make a full report when the order had been complied with, and providing for the bonus to be placed in escrow in the bank until the Secretary had approved the lease, were mere idle and useless provisions. We rather think that they had a fixed and set purpose understood by the court and the parties at that time, and that the provision requiring the approval of the Secretary of the Interior was intended as a condition precedent to be complied with in order to complete the execution of the lease contract, and that, not having complied with, the contract was not complete, and *no* estate vested in the lessee thereunder.

In Blackstone, book 2, p. 157, following a discussion of conditions subsequent, it is said:

"But if the condition be precedent, or to be performed before the estate vests, as a grant to a man that, if he kills another or goes to Rome in a day, he shall have an estate in fee, here, the void condition being precedent, the estate which depends thereon is also void, and the grantee shall take nothing by the grant; for he hath no estate until the condition be performed."

Chancellor Kent, in book 4, at page 125, says in regard to this condition:

"These conditions are also either precedent or subsequent; and, as there are no technical words to distinguish them, it follows that whether they be the one or the other is matter of construction and depends upon the intention of the party creating the estate. A precedent condition is one which must take place before the estate can vest or be enlarged; and if a lease made to B. for a year, to commence from the 1st day of May thereafter, upon condition that B. pay a certain sum of money within the time, or if an estate for life be limited to A. upon his marriage with B., here the payment of the money in the one case and the marriage in the other are precedent conditions, and, until the condition be performed, the estate cannot be claimed or vest. Precedent conditions must be literally performed, and even a court of chancery will never vest an estate, when, by reason of a condition precedent, it will not vest in law. It cannot relieve from the consequence of a condition precedent unperformed."

As to the rule of construction, the same authority, at page 133, says:

"Whether the words amount to a condition or a limitation, or a covenant may be matter of construction, depending on the contract. The intention of the party to the instrument, when clearly ascertained, is of controlling efficacy, though conditions and limitations are not readily to be raised by mere inference and argument. The distinctions on this subject are extremely subtle and artificial; and the construction of a deed as to its operation and effect will, after all, depend less upon the artificial rules than upon the application of good sense and sound equity to the subject and spirit of the contract in the given case."

Mr. Hargrave, in argument in the case of *Scott v. Tyler,* 29 Eng. Rep. (full reprint) at page 253, said:

"The condition precedent is of quite an opposite nature; there the estate cannot commence until the condition is performed, or the contingency has happened.   *   *   *   A passage in Plowden conveys an idea of the dependent nature of the estate on such a condition.   Judge Brown says (Plowd. 272) : 'If I grant to you that, if you will do such a thing, you shall have a lease in such particular land of mine, here the condition precedes the lease, as the needle precedes the thread; and as the needle draws the thread after it does the condition the lease.'   The condition, therefore, is beneficial, not penal, and is favoured and benignantly interpreted, according to the intention of the words.   Co. Lit. 218a, 219b.   *   *   *   Therefore, though the condition be impossible or illegal, no estate can arise, and it is the same as if none had been given.   Co. Lit. 206a and b, 217b, 218a; Fulbeck's par. 2, part. 67a.   The result is that, although penal conditions to destroy estates may be dispensed with, beneficial conditions to raise estates must always be complied with. If this doctrine is important at law, it essentially affects the jurisdiction of equity; from the penal nature of conditions subsequent, they, in general, fall within that lenient principle by which courts of equity relieve against penalties; but there is no connection between this and a condition precedent, which operates by giving an estate and conferring a benefit.   Upon such a condition equity cannot interpose; equity cannot raise an estate which the donor has not given.   If such a power was to be assumed over one subject, it might soon extend over the other, and overleap all boundaries."

These authorities, we consider, justify the conclusion that the provisions in the order requiring the approval of the lease by the Secretary of the Interior, interpreted according to the rules of common sense, and considering the circumstances surrounding the court and the parties at the time it was made, must be held to be a condition precedent, and it was placed in the order with the purpose and intent that the lease should not be complete or effective without the approval of the Secretary of the Interior.   This is true notwithstanding the fact that the Secretary of the Interior had, at that time, no legal authority to approve or disapprove the lease.   *Morrison v. Burnette,* 154 Fed. 617, 83 C. C. A. 391.   For that reason the condition was void, but, having been made a condition precedent in the court's order authorizing the lease, no estate vested until this condition was complied with.

Much reliance is placed upon the case of *Morrison v. Burnette, supra,* wherein the Circuit Court of Appeals, in construing section 20 of the Act of April 26, 1906, held that the proviso therein contained as follows: "Provided, that allotments of minors and incompetents may be rented or leased under order of the proper court"—taken in connection with the provisions of the Act of July 28, 1904, conferring "full and complete jurisdiction" upon district courts in the Indian Territory, dispensed with the approval of the Secretary of the Interior to mining leases on Indian lands, and that after the passage of the Act of April 26, 1906, the Secretary had no further authority to approve such leases, but full and complete authority to do so was conferred upon the United States courts in the Indian Territory.

The conclusion we have reached in this case is not in conflict with the decision in *Morrison v. Burnette, supra.* The distinction between a condition subsequent and a condition precedent marks the distinction between these cases. In the former the estate vests before the condition is to be performed, and, where void, the condition cannot operate to divest the estate, while in the latter the performance of the condition precedes the vesting of the estate, and where the condition is void no estate vests. In the instant case the condition requiring the approval of the lease by the Secretary was written in the order authorizing the lease, and was a condition precedent, while in the Morrison case the master advertised and sold the lease containing a condition for its approval by the Secretary, and the court approved the report of the master, and the condition requiring the Secretary's approval to that lease was to be obtained later, and was therefore a condition subsequent. The court in that case held that the condition was void, for want of authority in the Secretary to approve the lease, as provided in the condition. The estate, however, under that lease had vested, and the condition subsequent, although void, was not ground for forfeiture.

4. We cannot agree with the contention made that the plaintiff in error was compelled by "duress" to accept this condition, as the Secretary of the Interior was claiming authority to approve such leases, and the court was conceding it, and it could not have obtained the order for the lease without this condition. It is doubtless true that the court would not have made the order without this condition incorporated in it. This fact, instead of supporting the claim of duress, tends to confirm the finding hereinabove made that this condition was knowingly and purposely written in the order, and that it was intended by the court and understood by the lessee to be a condition precedent. At any rate, the plaintiff in error cannot escape the consequences of failure to comply with it on the ground of duress. It does not appear that this provision was even objected to at the time the order was made. In fact, there is evidence in the record that would possibly justify the inference that the attorney for the plaintiff in error prepared this order with this condition in it and presented it to the court for his signature.

5. Again, the order of July 24th cannot be given the force contended for by the plaintiff in error. It is not clear that the court was not imposed upon and induced to make this order through mistake of fact; that the order of June 7th had been fully complied with, and the approval of the Secretary of the Interior to the lease had been secured. It will be remembered that the lease was directed to be executed under the rules and regulations of the Secretary of the Interior, and the bonus money was directed to be placed in escrow until the Secretary had approved the lease, and then delivered to the guardian, and the guardian was directed to execute an additional bond for $3,200 when he received the bonus money, and, when all these things had been done, the order directed the guardian to make a "full report" to the court. The guardian made a report on or prior to July 24th. What he reported does not appear; for his report is not included in the record. It does appear from this order of July 24th that he had filed the additional bond for $3,200, and

though he was not directed to do this until after the lease had been approved by the Secretary of the Interior, this fact tends to show that the guardian reported to the court that he had fully complied with the order authorizing the lease. These things justify the inference that either the court was misled and deceived by the report of the guardian, and led to make the order of July 24th, under a misapprehension of the facts, or that he considered that this order was one of the necessary steps to be taken in the completion of the lease. The fact that the lessee, subsequent to July 24th, proceeded in its attempt to secure the approval of the lease by the Secretary of the Interior, having previously filed the same with the Commissioner to the Five Civilized tribes, and caused it to be forwarded to the Secretary for his approval, would indicate that the lessee regarded this order of July 24th as one of the necessary steps to be taken in perfecting the lease. There is nothing in this order to indicate any purpose on the part of the court to vacate or set aside the condition requiring the approval of the Secretary of the Interior in the order of June 7th, and we are constrained to decline to give it such effect.

We therefore conclude that the demurrer was well taken to the first cause of action on the grounds that the facts set out were not sufficient to justify the chancellor in granting equitable relief, inasmuch as the plaintiff did not come into court with clean hands and had failed to comply with a condition precedent upon which the lease was authorized; namely, had not secured the approval of the Secretary of the Interior. We are equally certain that the demurrer was good as to the second cause of action, in which the claim was made for compensation for expenses in operating the lease and for improvements placed on the premises. The plaintiff is in possession. It invokes the jurisdiction of equity to have the lease under which it is claiming declared valid and the lease of the Alpha Oil Company declared invalid. It may be that the plaintiff in error could not be dispossessed without being compensated in a manner and as

it claims it should be, but that cannot be done in this suit. The facts alleged in the two counts were not sufficient to justify the court in granting the relief prayed for, or, in fact, any relief. The trial court was right in sustaining the demurrer.

We recommend that the exception be overruled, and that the judgment appealed from be affirmed, and that the former opinion filed herein be withdrawn, and this substituted therefor, and that a rehearing be denied.

By the Court: It is so ordered.