### LITZKE v. GREGORY.

(Circuit Court of Appeals, Eighth Circuit. August 11, 1924.)

No. 6472.

1. Estoppel ⟐78(1)—Stockholders of insolvent corporation held estopped to deny or repudiate a promise made on their behalf, on which extension of time of payment of its debts was obtained.

Stockholders of an insolvent corporation, who, through its treasurer, obtain from its creditors an extension of time of payment, are estopped, when subsequently claiming as creditors of the corporation, from denying or repudiating the promise made on their behalf by the treasurer that they would pay into the corporation a certain sum for continuing its business, though the promise that they would pay it in as an "assessment," instead of an "advancement," was a mistake of the treasurer; the creditors not knowing of the mistake.

2. Bankruptcy ⟐312—Stockholders held to have perpetrated a fraud on corporation's creditors, defeating their claim.

Stockholders of a corporation, who obtained an extension of time of payment of its debts by promising to pay into the corporation a certain sum for continuing its business, and who immediately caused the corporation to borrow money on its notes secured by unrecorded mortgage maturing on the day the extension expired, and merely paid those notes and took an assignment of them and the mortgage, held to have deceived the creditors and to have perpetrated a fraud on them, with resulting damage to creditors, defeating their claim in bankruptcy on the assigned notes and mortgage.

**3. Bankruptcy ⚖═312—Court one of equity, which will not grant relief to one wanting in good faith in the transaction.**

A court of bankruptcy is a court of equity, within the rule that a court of equity will refuse to interfere to grant relief to one who, in the matter or transaction concerning which he seeks its aid, has been wanting in good faith, honesty, or righteous dealing.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

The claim of Paul R. Litzke, trustee, against J. A. Gregory, trustee in bankruptcy of the Tipton Nursery, Inc., was disallowed by the referee. From an order of the court affirming the referee's findings and order, claimant appeals. Affirmed.

Sam T. Poe, Tom Poe, and Louis Tarlowski, all of Little Rock, Ark., for appellant.

J. H. Carmichael and G. W. Hendricks, both of Little Rock, Ark., for appellee.

Before SANBORN and LEWIS, Circuit Judges, and SCOTT, District Judge.

SANBORN, Circuit Judge. This is an appeal from an order of the District Court affirming the findings and order of the referee in bankruptcy disallowing the claim of the appellant, Paul R. Litzke, as trustee for himself and certain other stockholders of the bankrupt, the Tipton Nursery, Inc., either as a secured or unsecured claim. The record discloses these facts:

The Nursery, a corporation, was adjudged bankrupt on its voluntary petition on December 24, 1921. The appellee is its trustee in bankruptcy. In June, 1921, it was insolvent, and, as Mr. W. A. Hicks, its treasurer, testified, "it could nowhere near pay its debts." It had claims for the purchase price of nursery stock delivered which it hoped it might collect in the fall of that year, after the farmers had sold their crops; it had orders for nursery stock, and had such stock ready to deliver, but claims of its creditors were due, and they were pressing for payment. Its stockholders held a meeting, discussed and considered the financial condition of the corporation, and the appellant and his associate stockholders, owning stock in the corporation to the amount of about $10,000, agreed to pay into the corporation about that amount, on condition that its creditors would extend the time for the payment of their claims until December 15, 1921.

Mr. Hicks, the treasurer of the corporation, sent to each of its creditors on June 11, 1921, a letter signed by him as its treasurer, which contained, among many statements about the financial condition and prospects of the corporation, a statement that its stockholders had had a meeting; that at that meeting "the stockholders who owned stock aggregating around $10,000 * * * agreed that, if the creditors of the company would extend payment of their accounts to December 15, 1921, they would pay into the company a 100 per cent. assessment. * * * The stockholders, however, who have agreed to pay into the company a 100 per cent. assessment, are not willing to become liable any further by way of indorsement or guaranty of the outstanding debts of the company. * * * If all our creditors agree to such an arrangement, the stockholders aggregating holdings of $10,000 will pay into the company a 100 per cent. assessment, the funds to be used for operation, and in this way continue to operate and pay up all of our outstanding obligations by January 1, 1922."

Mr. Hicks testified that in writing this letter "he used the words '100 per cent. assessment,' but he meant '100 per cent. advancement,' and that he made a mistake in his phraseology, but his explanation of the phraseology, such as it was, was never explained to the creditors, and that the mistake was an error on his part, and on his part alone"; that it was understood among the stockholders that they would advance the money as a loan, and not as a contribution or assessment; that no credit was extended on the strength of his letter; that some of the creditors extended their indebtedness as suggested in the letter; that none of them sued; that the stockholders represented by the appellant, Litzke, advanced $8,300; that this amount "did not increase the corporation's indebtedness, since the money was used for operating expenses only; that $1,000 of this money was used and paid on real estate bought by this company."

After this meeting of the stockholders was held, and after this letter of the treasurer was sent to the creditors, and on June 12, 1921, without any notice to the creditors, the appellant and his associates caused the corporation to make a mortgage of all its real estate and its personal property to the American Bank of Commerce & Trust Company to secure the payment of its indebtedness of $2,000 to that bank then existing, and of any other indebtedness of the corporation to the bank that should exist in the future, not exceeding in the aggregate $12,-

000, and these stockholders caused the corporation to borrow of the bank on its promissory notes to the bank, all falling under this mortgage and payable December 15, 1921, in the aggregate $8,350. These notes drew interest at the rate of 8 per cent. per annum. When they became due on or about December 15, 1921, the stockholders represented by the appellant paid them and took an assignment of the notes and the mortgage. After the adjudication in bankruptcy all the real estate described in the mortgage was sold by the trustee in bankruptcy, and all its proceeds were applied to the payment of the claims upon it prior and superior to the claim of the mortgage. All the personal property described in the mortgage was sold, and the proceeds thereof, $3,050, was in the hands of the trustee in bankruptcy when, on October 3, 1922, the appellant, Litzke, as trustee for himself and his associate stockholders, who paid the notes, filed his claim for all of this $3,050 on the ground that by virtue of the mortgage to the bank assigned to him he had a lien thereon superior to the claims of the other creditors of the bankrupt.

The referee and the District Court, after hearing evidence and the arguments of counsel, held that the execution of the mortgage to the bank, the taking of the assignment to Litzke, as trustee for himself and his associate stockholders who had agreed to advance the $10,000, constituted under the circumstances of this case a fraud upon the creditors of the bankrupt who had extended the time of the payment of their claims six months in reliance upon the agreement of these stockholders in June, 1921, and the letter of the treasurer of the corporation to the effect that, if these extensions were made, they would pay into the treasury about $10,000 to be expended to continue the operation of the corporation.

[1] Counsel for the appellant and his associates argue that the referee and the District Court erred in disallowing their claim (1) because there was no substantial evidence in the record of any fraud in their transactions; and (2) because none of the creditors sustained any damage or loss by the extension of the time of payment of their claims for the six months. They contend that the claim of fraud rests entirely upon the letter of the treasurer, that the only expression in that letter tending to indicate misrepresentation or fraud is the statement that the associated stockholders would pay into the company "a 100 per cent. assessment," that this was simply an involuntary use of the word "assessment" for "advancement," and that in any event the letter did not bind them. But the things these associated stockholders desired and sought to obtain by their agreement and by the negotiation conducted by the treasurer by means of his letter were their continuance in the operation and control of the corporation and of its business and the extension of the time of payment of the claims of its creditors for six months. By means of this letter they obtained from their creditors, accepted and used for their own benefit, and still retain these desiderata, and they are thereby estopped from denying or repudiating the promise which that letter contained on their behalf that they would pay into the corporation about $10,000 for the purpose of carrying on and continuing the business as therein stated. Nor can they escape from the just effect of this letter on the ground that the treasurer of their corporation testified that he made the mistake of writing the word "assessment" into the letter, instead of the word "advancement." In this negotiation for the contract of extension he was the agent of these associated stockholders; he was not the agent of the creditors of the corporation. The latter were never notified of the alleged mistake in the letter until after they had granted the extensions and they had expired.

[2] Moreover, the letter and the circumstances in which it was sent by the stockholders, received by the creditors, and acted upon by both, leave no doubt that, whether the word "assessment" or the word "advancement" had been used in it, its plain meaning at the time it was received and acted upon was that these stockholders would pay into the corporation about $10,000 for the privilege of continuing the operation of the corporation for six months without notice to or any thought or suspicion on the part of any of the creditors that these contributing stockholders were to be secured for the repayment of their contributions by any mortgage or lien of any kind upon the property of the corporation. It is certain that, if these stockholders had informed the creditors that one of the conditions of their paying into the corporation these contributions was that they should be secured for the repayment thereof by a mortgage upon all the property of the corporation, the extensions would never have been granted by them. These stockholders clearly knew this, and they intended to and did conceal

the security which they took by means of the mortgage to the bank until they had reaped the full benefit of the extensions of the payments they asked of the creditors. They held their meeting, from which the letter and the proposition for an extension of the times of payment arose, on June 11, 1921. The treasurer's letter to the creditors was dated on that date. On July 12, 1921, they caused the Nursery to mortgage all its property to the bank to secure the promissory notes of that corporation to it, all payable December 15, 1921, the day when the extensions of the times of payment of the claims of the creditors would expire. There is no evidence in the record that they ever recorded that mortgage, and as the burden was on the appellant to prove its record, if it was recorded, there is no doubt that it never was so recorded. The unavoidable result of all the evidence in this case is that these stockholders, by their representations and promises to the creditors of the Nursery to pay into that corporation about $10,000 in consideration of the creditors' extension of the times of payment of their respective claims, and by their silence concerning and concealment of the mortgage they caused the Nursery to place upon all its property, deceived these creditors into granting the extensions of the times of payment of their claims and perpetrated a flagrant fraud upon them.

But, say counsel for the associated stockholders, fraud without resulting damage presents no defense or ground for recovery, and the creditors sustained no damage from the stockholders' action. They base this position upon the testimony of Mr. Hicks, the treasurer, "that at the time the company went into bankruptcy it was in no worse condition financially than it was in the spring of 1921, when the proposition was made to the creditors to wait until December 15 for the payment of their account." A consideration of all the evidence, however, raises serious doubt whether Mr. Hicks was correct in this statement. Whether he was or not, the question here is not whether the financial condition of the corporation was worse in December, 1921, than it was in the spring or early summer of 1921; it is whether the financial condition of its creditors, who extended the time for the payment of their claims at the request and on the representations of the associated stockholders, was worse in December than in June by reason of that extension and of the mortgage the stockholders placed on all the property of the corporation; and, if coun-

sel's claim that this mortgage is valid is sustained, there is no doubt about that. In the spring of 1921 those creditors were entitled to their pro rata share of the proceeds of the property of the corporation, free from the claim of the associated stockholders against the corporation, which is made now for $9,102.26, and free from their claim of a superior lien for that amount of money upon all the proceeds of the property of the corporation, which, if sustained, will entirely absorb the pitiful remnant of those proceeds, $3,050, and leave these creditors nothing. A careful review of all the evidence in this case leaves no doubt that there was no mistake in the findings and conclusions of the referee and the court below that the appellant and his associated stockholders deceived and defrauded to their substantial damage the creditors of the Nursery, who extended the time of payment of their claims by their misrepresentation, their false promises, and their concealment of the mortgage, and there was no error in the disallowance by the referee and the court of their claim in this case, either as a secured or an unsecured claim.

[3] A court of bankruptcy is a court of equity. The associated stockholders, who conceived and acted in the execution of the scheme to cut the creditors out of their just and equitable shares of the proceeds of the property of their corporation, are now appealing to this court of equity to assist them in depriving their victims of all or a part of the $3,050 that remains out of the proceeds of the property of that corporation. But nothing but good faith, the obligations of duty, and reasonable diligence will move a court of equity to action. The salutary principles which guide it are expressed by the maxims, "He who comes into equity must come with clean hands," and "He who has done inequity can not have equity." A court of equity will refuse to interfere to grant relief to one who, in the matter or transaction concerning which he seeks its aid, has been wanting in good faith, honesty, or righteous dealing. Michigan Pipe Co. v. Fremont Ditch, Pipe Line & Reservoir Co., 111 Fed. 284, 287, 49 C. C. A. 324; Weegham v. Killefer (D. C) 215 Fed. 168, 171; Union Central Life Ins. Co. v. Drake, 214 Fed. 536, 541, 542, 131 C. C. A. 82; Carmen v. Fox Film Corporation (C. C. A.) 269 Fed. 928, 933, 15 A. L. R. 1209. In Deweese v. Reinhard, 165 U. S. 386, 390, 17 Sup. Ct. 340, 341 (41 L. Ed. 757), Mr. Justice Brewer, delivering the unanimous opinion of the Supreme Court, said: "A

court of equity acts only when and as conscience commands, and if the conduct of the plaintiff be offensive to the dictates of natural justice, then, whatever may be the rights he possesses and whatever use he may make of them in a court of law, he will be held remediless in a court of equity."

The order of the court below, affirming the order of the referee, disallowing the claim of Paul R. Litzke, trustee, either as a secured or as an unsecured claim, ought to be and it is affirmed.