## THE TAMPICO.

### SUDDEN & CHRISTENSON v. CROSSETT WESTERN LUMBER CO.

(Circuit Court of Appeals, Ninth Circuit. February 7, 1921.)

No. 3533.

1. **Shipping ⬳56—Subcharterer held entitled to rely on statements of charterer as to term of original charter in arranging for voyage.**

   Where a subcharter was made subject to the conditions of redelivery of the original charter and the subcharterer, not knowing the terms of the original charter, before exercising an option for an additional voyage, asked the charterer for a copy of the original charter, and was told that it was practically the same as another charter, except that redelivery was to be made about June 15, and nothing was said about a provision of the original charter authorizing the owner to terminate it before June 15, the subcharterer had a right to rely on the information furnished, and to believe that there was no provision for termination in the charter, and to act on such belief in arranging for another voyage.

2. **Estoppel ⬳106—Proving estoppel to defeat defense to cross libel held not to make it basis of affirmative relief.**

   Where a charterer sued the subcharterer for unpaid hire, and the subcharterer, by cross-libel, sought to recover damages because it was not permitted to complete a voyage, and, in answer to the cross-libel, the

libelant pleaded that the subcharter was subject to the provisions of the original charter authorizing the owner to terminate it, the cross-libelant, by proving the charterer's representations as an estoppel against such defense to the cross-libel, was not making the estoppel the basis of affirmative relief, contrary to the rule that estoppel cannot be so used.

3. **Estoppel ☞83 (1)—Representations need not be made with fraudulent intent.**

Estoppel may be predicated on representations not made with fraudulent intent, if of such a character as to induce a reasonable and prudent man to believe that they were intended to be acted on.

4. **Shipping ☞56—Subletting by subcharterer held not to defeat recovery, when not objected to.**

It was not a defense to a cross-libel by a subcharterer of a vessel that it sublet the vessel without the consent of the charterer, where the charterer was advised, before the subcharterer exercised an option for an additional voyage, that the vessel was to be used in performing an obligation to the company to which the subcharterer was claimed to have sublet, but no objection was made by the charterer.

5. **Shipping ☞56—Subcharterer not entitled to contract for use of steamer after learning that owner had demanded possession.**

Though a charterer represented to the subcharterer that the original charter called for delivery about a certain date, without mentioning the owner's right to terminate the charter, the subcharterer had no right to contract for the use of the vessel in reliance upon such representations, after learning that the owner had demanded possession under the rights reserved to it in the original charter.

6. **Estoppel ☞87—Change of possession in reliance on representations to party's injury necessary.**

To establish estoppel, based on the representations of the charterer of a vessel as to time for redelivery under the original charter, the subcharterer must show that, relying on such representations, it changed its position to its injury.

Appeal from the District Court of the United States for the First Division of the Northern District of California; Frank H. Rudkin, Judge.

Suit by the Crossett Western Lumber Company against the American steamship Tampico, claimed by Sudden & Christenson, owners. From a decree for the libelant, claimants appeal. Reversed and remanded, with instructions.

On April 15, 1915, the Pacific Coast Steamship Company, the owner of the steamship Tampico, chartered the vessel to the appellee. The charter party provided for redelivery of the vessel to the owner not later than July 1, 1916, unless the time of redelivery should be extended by the owner for a further period of 60 days; but it contained the further provision that the owner might, if it should so elect, require that the vessel be redelivered to it at Seattle, Wash., on or about May 15, 1916, upon its giving to the appellee, on or before February 1, 1916, a written notice to that effect, and it provided that on such notice being given the vessel might be redelivered at any time between April 1, 1916, and May 15, 1916. On October 18, 1915, the appellee subchartered the steamship to the appellant. The subcharter party gave to the appellant the use of the steamship for a stipulated voyage, with the option to use the same for a second voyage upon the same terms and conditions as the first. It contained a marginal provision as follows: "Subject to the conditions of redelivery as per charter between Crossett Western Lumber Company and Pacific Coast Company."

The appellant performed the first voyage, and thereafter, on December 31, 1915, it duly notified the appellee in writing that it intended to exercise its

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

option for a second voyage. The notice was required to be in writing, and to be given 20 days at least before the second voyage was undertaken. On January 3, 1916, the appellee acknowledged receipt of the notice. On January 7, 1916, the Pacific Coast Steamship Company notified the appellee that it required a redelivery of the vessel by May 15, 1916. On January 11, 1916, the appellee telegraphed the appellant as follows: "Our charter has clause Tampico must be delivered May fifteenth if notified by February first. Pacific Coast served notice to-day. We there notify you." On the following day the appellant replied, directing the attention of the appellee to its previous statement that the appellee's charter on the Tampico expired not later than June 15, and stating that the appellee expected "to be able to redeliver at an Atlantic port on or about May 4th, if canal be open, or, if canal be closed, on Pacific Coast port on or about May 10th next. * * * We do not understand your telegram under date of January 11th, and we would like you to advise us at once on what ground the Pacific Coast S. S. Co. claims the right to notify you that the Tampico must be redelivered by May 15, 1916." To that letter the appellee answered, referring to the terms of its charter from the owner.

The second voyage was begun on February 22, 1916. The vessel went to the coast of South America, and there loaded a cargo of nitrate, and thence started northward, and arrived at the Pacific entrance to the canal about April 29, 1916. The canal was then open for navigation. The captain of the vessel had received instructions from the owner prior to loading "to proceed as charterer's agent directed, but to load for San Francisco." Pursuant to these instructions he proceeded to San Francisco, where the vessel was redelivered to the appellee on May 19, 1916. The appellant withheld the charter hire of the vessel from April 23, 1916, to May 19, 1916, amounting to $8,492.88, contending that it had the right to complete the voyage through the canal to the Atlantic Coast, and then make redelivery of the vessel prior to June 15, 1916, in accordance with the terms of the charter party.

The appellee filed its libel to recover the unpaid charter hire. The appellant answered, setting up the defense that the appellee had failed to perform the conditions of the charter party, and that the appellant had been damaged thereby; and the appellant filed a cross-libel, setting up the facts with regard to the second voyage, and claiming damages in the sum of $14,871.57. Answering the cross-libel, the appellee pleaded the defense that the charter party between the appellee and the appellant was subject to the condition for redelivery contained in the charter party between the appellee and the owner. Upon the pleadings and the evidence, the court below found that the condition for redelivery contained in the charter party from the owners to the appellee was binding upon the appellant, and judgment was entered for the unpaid charter hire from April 23, 1916, to May 19, 1916, and the cross-libel was dismissed.

Ira S. Lillick, of San Francisco, Cal., for appellant.

Platt & Platt and Hugh Montgomery, all of Portland, Or., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The conclusion of the court below was based upon the rule which was applied by this court in Conner v. Manchester Assur. Co., 130 Fed. 743, 65 C. C. A. 127, 70 L. R. A. 106, where we held that an insurance certificate, containing the provision that its terms were subject to all the terms and conditions of a certain open policy in the possession of the insurance company, bound the insured to the provisions of such open policy, although he had no knowledge of the contents thereof. The facts in the present case, we think, take the controversy out of the

rule there announced. The appellee held the Tampico under a charter from its owner. It entered into a charter party with the appellant for a prescribed voyage, giving it the option to use the vessel for a second voyage of a similar nature. The contract was expressly made subject to the provisions of the original charter from the owner to the appellee. The appellant sent the vessel on her first voyage. At that time it had not determined whether or not it would exercise the option for a second voyage. On December 17, 1915, the appellee wrote to the appellant, inquiring whether it would want the vessel for another voyage. On December 20 the appellant answered, saying:

"Will you please send us copy of your contracts with the Pacific Coast Company with reference to this steamer. We have a copy of the Eureka contract, but not of the charter of the Tampico. * * * As soon as we have this information, we hope to be able to answer promptly as to whether or not we will want to use the vessel for another trip."

At that time the appellant was negotiating with W. R. Grace & Co. for the use of the Tampico for a second voyage. The letter of December 20 was sent in order to ascertain the date of the appellee's redelivery obligation to the owner. On December 27, 1915, the appellee answered, saying that its charter of the Tampico from the owner "reads practically the same as that of the Eureka, except that we are to make redelivery about June 15," and the letter closed with the request that on receipt thereof the appellant advised the appellee of its decision as to the option. Upon receipt of that letter the appellant closed its negotiation with W. R. Grace & Co. and fixed the vessel for the second voyage. On December 31, 1915, the appellant wrote to the appellee:

"We will exercise our option of the second voyage of the steamer Tampico."

On January 3, 1916, the appellee acknowledged receipt of that notice and said:

"As we formerly wrote you, the charter of this boat expires not later than June 15, 1916."

These communications from the appellee answered the appellant's, inquiry as to the term of the original charter party. The appellant had asked for a copy of that charter, for the purpose of ascertaining the length of time for which the owner had parted with the right of possession. The letters conveyed that information fully and completely. The appellant had the right to rely on the information so furnished. It had the right to believe that there was no provision in that charter party by which the term thereof could be abbreviated at the option of the owner. The representation was made with the intention that it should be acted upon. It was a representation such as to induce a reasonable and prudent man to believe that it was intended to be acted upon, and the appellant in acting upon it exercised such reasonable diligence as the circumstances required. The situation is the same as it would have been, had the appellee sent the appellant a copy of that charter party, with the optional provision in favor of the owner inadvertently omitted therefrom. The appellee knew for what purpose the information was sought, and it was advised of the

voyage which the appellant had in contemplation. For further information it referred the appellant to the charter which the appellee had from the owner of the Eureka, a copy of which was in the possession of the appellant. That charter party contained no provision by which the term thereof could be abbreviated at the option of the owner.

[2] The appellee asserts, as to the case made by the cross-libel, that estoppel cannot be used as a basis of affirmative relief, and cites Dickerson v. Colgrove, 100 U. S. 578, 25 L. Ed. 618, where the court said that estoppel—

"is available only for protection, and cannot be used as a weapon of assault. It accomplishes that which ought to be done between man and man, and is not permitted to go beyond this limit."

That was an action of ejectment. The defense was based upon equitable estoppel, and was held sufficient; the court ruling that the action involved both the right of possession and the right of property, and, as the facts indicated that the plaintiff was not in equity and conscience entitled to disturb the possession of the defendants, the latter might rely upon the doctrine of equitable estoppel to protect their possession. In the present case estoppel is not made the basis of the relief sought by the cross-libel. The relief sought is based only upon the terms of the contract between the appellant and the appellee, and estoppel is asserted only as against the defense which the appellee pleaded thereto, and we see no reason why it is not available for that purpose.

[3] It is contended that there can be no estoppel in cases where, as here, the representations were made without fraudulent intent. But the rule is well established that it is not necessary that the representations shall have been made with such an intent. It is sufficient if they are "of such a character as to induce a reasonable and prudent man to believe that they were intended to be acted on." 21 C. J. 1121; 10 R. C. L. 691.

[4] One of the defenses asserted by the appellee to the damages claimed upon the cross-libel is the fact that the appellant sublet the Tampico to W. R. Grace & Co. without the consent of the appellee; the charter between the appellant and the appellee having provided, "Charterers to have the option of subletting the steamer, provided consent of owners obtained," and Mitchell, the manager of the appellee, having testified that the appellee never consented to any subcharter. To this it is to be said that it does not appear from anything in the record that the appellant did in fact subcharter the vessel to W. R. Grace & Co., or that it entered into any agreement with that company other than a contract of affreightment. It appears, also, that the letter of the appellant to the appellee of December 20, 1915, advised the appellee that the appellant proposed to use the Tampico in performing its obligation to W. R. Grace & Co. and that no objection was made by the appellee.

[5, 6] The record presents the question of the rights and obligations between the appellant and the appellee from and after the time when the former received, on January 11, 1916, notice that the Pacific

Coast Steamship Company demanded possession of the vessel on or before May 15, under the right which was reserved to it in the original charter. We think that from and after that date the appellant had no right to enter into contracts for the use of the Tampico in reliance upon the appellee's said representations. The vessel was then on her way home from her first voyage. She was not sent out upon the second voyage until February 22, 1916. What the contractual relations were between the appellant and W. R. Grace & Co. on January 11 does not appear from the record. It is not shown that there was then a binding contract between them.' The appellant's testimony that at that time the vessel was fixed for the second voyage may mean only a fixed intention in the minds of the appellants to use the vessel for a second voyage. The appellant's defense to the original libel and its claim for damages in the cross-libel rest upon estoppel, and to establish estoppel it must show that, relying upon the representations of the appellee, it changed its position to its injury. "The whole office of an equitable estoppel is to protect one from a loss which, but for the estoppel, he could not escape." 10 R. C. L. 698.

We think the decree of the court below should be reversed, and the cause remanded to that court, with instructions to ascertain and adjudge the amount, if any, to be awarded to the appellee upon the issues created by the libel and the answer thereto, and the damages, if any, to be awarded to the appellant under the issues arising upon the cross-libel, and to enter a decree accordingly. The parties to have permission to take further testimony upon the issues so to be determined.

It is so ordered.