**In the Matter of CABLE–LINK CORPORATION, Bankrupt.**

**No. 35892.**

United States District Court
E. D. Michigan, S. D.

Oct. 19, 1955.

278

John R. Dykema, Dykema, Jones & Wheat, Detroit, Mich., for Paul Nesbit, petitioner.

Leslie D. Bloom, Detroit, Mich., for trustee.

FREEMAN, District Judge.

In this case, the petitioner Paul Nesbit seeks review of an order of the Referee in Bankruptcy disallowing Nesbit's claim of security as to $7,000 of his claim for $32,000.

Cable-Link Corporation, the bankrupt, was at all times insolvent. In February or March, 1953, Nesbit loaned the bankrupt $25,000 and was given an option for repayment in cash or stock, which portion of his claim is unsecured and is not in dispute. On April 9, 1953, Nesbit loaned the bankrupt an additional sum of $3,000 and received a thirty-day note, which included an agreement by the bankrupt to assign to Nesbit its Invoice No. 347 to the Ford Motor Company as

security for the loan. This note was not recorded, Nesbit did not enforce his security, and the bankrupt collected such invoice and used the proceeds in the ordinary course of business prior to August 11, 1953, with Nesbit's consent.

In July or early August, 1953, Nesbit became a director of the bankrupt. On August 11, 1953, he made an additional loan of $4,000 to the bankrupt, receiving a note for $7,000, which indicated that it covered the contemporaneous loan of $4,000 and also the April 9 loan of $3,000. This note also stated that it was given in full discharge of the $3,000 note of April 9 and that the bankrupt agreed to assign to Nesbit "as security for payment of this note its interest in all accounts due or to become due, receivable from Ford Motor Company." At the same time, Nesbit was given such an assignment which was not recorded and no notice thereof was given to the Ford Motor Company.

Subsequent to August 11, 1953, Nesbit became secretary and treasurer of the bankrupt and as such chief financial officer Nesbit thereafter, without disclosing his assignment of the Ford Motor Company accounts receivable, urged and persuaded creditors of the bankrupt not to bring legal proceedings for collecting their accounts, informing such creditors that they would get nothing if legal proceedings for collection were taken and that they would be paid out of the bankrupt's accounts receivable, including those of the Ford Motor Company, as collected. Such representations were established by the testimony of two creditors who also testified they would have filed suit against the bankrupt had they known of the assignment of the Ford account to Nesbit and that additional credit was extended to the bankrupt in reliance on such representations. It was stipulated that other creditors would give like testimony of cumulative effect. Such creditors represented claims against the bankrupt totalling over $16,500, which exceeded the amount due from the Ford Motor Company at the time of bankruptcy. The amount of the Ford account exceeded the claim of each of the several creditors. Nesbit also admitted that he "pleaded with every creditor not to take action" while efforts were being made to float a stock issue, which was unsuccessful.

A voluntary petition in bankruptcy was filed on May 7, 1954, and during such proceedings Nesbit filed a proof of claim in the amount of $32,000 of which $25,000 was for an unsecured claim and $7,000 was for a secured claim, which secured claim was based on the note and assignment of August 11, 1953. The Trustee in Bankruptcy challenged the validity of Nesbit's $7,000 secured claim on the grounds that $3,000 of said claim was an antecedent debt and a preference under Section 60, sub. a(1) and (2) of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a(1, 2), which was voidable by the Trustee under Section 60, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. b. The Trustee also argued that, inasmuch as the $3,000 portion of the claim was voidable as a preference under Section 60, the entire claim was therefore voidable, citing Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133, as controlling. The Trustee further argued that Nesbit should be estopped from asserting his claim of security as to the entire $7,000 since he remained silent as to his assignment of the Ford Motor Company account receivable while urging creditors of the bankrupt to rely on being paid out of the proceeds of such account and to forbear bringing suit to enforce their claims.

The opinion and order of the Referee in Bankruptcy held that the $3,000 loaned by Nesbit to the bankrupt on April 9, 1953, was an unsecured "antecedent indebtedness" on August 11, 1953, when the additional $4,000 loan was made; that the specific Ford invoice which bankrupt agreed to assign to Nesbit in the note dated April 9, 1953, had been collected by bankrupt and was not enforced by Nesbit; that the assignment of August 11, 1953, was not recorded and was therefore never perfected under the Michigan Assignment of Accounts Re-

ceivable Act, Act 309, 1945 Public Acts; Section 19.841 et seq., Mich.Stat.Ann., at least to the extent of the $3,000 antecedent indebtedness; that this $3,000 portion of the assignment never became perfected under Section 60, sub. a(2) and (3) of the Bankruptcy Act and is therefore deemed to have been made immediately before bankruptcy and was voidable as a preference under Section 60, sub. b of the Bankruptcy Act and was a fraudulent conveyance under Section 70, sub. a(1) of the Bankruptcy Act. The Referee also held that.an assignment of accounts receivable, invalid in part, is invalid in its entirety and that Nesbit, having induced creditors to withhold action on their claims while keeping silent as to his own assignment of the Ford account while the corporation was insolvent, was estopped from asserting his assignment.

Nesbit petitions for review of the order of the Referee, claiming that the Referee erred in deciding (1) that the assignment with respect to the $3,000 was never perfected, (2) that an assignment of accounts receivable invalid in part is invalid in its entirety and (3) that Nesbit was estopped from asserting a secured claim based on the August 11 assignment.

It is quite clear from the Referee's opinion that he did not hold that the agreement to assign the specific Ford Invoice No. 347 as stated in the April 9 note was not perfected, but rather held that such security vanished when the invoice was paid by the Ford Motor Company to the bankrupt with Nesbit's consent, thereby making the said $3,000 an antecedent indebtedness as of August 11.

In his brief, Nesbit admits that the $3,000 portion of the assignment of August 11 is unsecured ·and an antecedent indebtedness within the meaning of the Michigan Assignment of Accounts Receivable Act, since no notice of the assignment was recorded, and that the assignment to that extent was not perfected under Michigan law and therefore was voidable under Section 60, sub. b of the Bankruptcy Act, and ˙ as to this amount claims only the position of a general creditor. However, he does contend that the $4,000 present consideration for the August 11 assignment should stand secured.

■ The Trustee argues and the Referee agrees that an assignment of accounts receivable invalid in part under Michigan law is invalid in its entirety. It is well ·settled that the question of whether a transfer is perfected is a matter of substantive law and is therefore determined by the law of the state where the transfer took place. Corn Exchange National Bank & Trust Co. v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884. The Michigan Assignment of Accounts Receivable Act is so worded that in part it follows the New York validation view and dispenses with any need for the assignee to notify the obligor of the accounts assigned, but Section 2 of the Act, Section 19.842, Mich.Stat.Ann., also includes a proviso that if an assignment is given as security for an antecedent debt such assignment must be recorded to be perfected. Although the Michigan Supreme Court has not interpreted the effect of the proviso, it seems clear that the general legislative intent is to protect an assignee of accounts receivable against claims arising from subsequent purchasers or creditors of the assignor without requiring the assignee to record the assignment. The Michigan statute, however, is silent on the question of whether an assignment invalid in part is invalid in its entirety.

Without deciding the effect of the Michigan statute or interpreting Section 60, sub. a(8) of the Bankruptcy Act, which petitioner claims is applicable to this case, this court finds ample authority for the proposition that a transfer made partly for an antecedent debt and partly for present consideration is voidable as a preference only to the extent of the antecedent indebtedness. Matter of Sutherland Co., Inc., D.C., 245 F. 663; City National Bank of Greenville v. Bruce, 4 Cir., 109 F. 69; In re Dismal Swamp Contracting Co., D.C., 135 F. 415; Brush v. Seymore, D.C., 30 F.Supp. 202..

Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133, cited by petitioner and relied on by the Referee as authority for the rule that a transfer invalid in part is invalid in its entirety, is not applicable to the instant case. The Moore case involves a transfer voidable in part by an existing creditor, which is not the situation in the case at bar. Nesbit's assignment was not a fraudulent or voidable assignment subject to attack by an actual creditor and the Michigan statute did not require same to be recorded, except as to an antecedent indebtedness, in order to be perfected.

The Trustee further contends that the entire assignment may be set aside by the Trustee under Section 70, sub. e of the Bankruptcy Act. Section 70, sub. e (1) provides in substance that a transfer, which under any federal or state law is fraudulent as against or voidable by any creditor, is null and void as against the Trustee. Thus, to avoid a transfer under Section 70e, the Trustee must show that at least one actual flesh and blood creditor can upset the assignment under local law. Once this is established, the Trustee can void the entire assignment and take over all the property conveyed. Section 70, sub. e(2) merely codifies Moore v. Bay, supra. In the present case, the assignment as to the $4,000 present consideration is not fraudulent against or voidable by an existing creditor. Since Section 70, sub. e(1) is not applicable, to the $4,000 present consideration, Section 70, sub. e(2) cannot be invoked to invalidate the entire assignment.

■ Therefore, this court is of the opinion that the August 11 assignment is voidable by the Trustee to the extent of the $3,000 antecedent indebtedness as a preference under Section 60, but that such assignment as to the $4,000 present consideration is not a technical preference within the meaning of Section 60.

The Trustee asserts and the Referee held that the petitioner should be estopped from asserting his secured claim. Nesbit argues and the Trustee admits that the loans in question were made in good faith and were not tainted with fraud. The evidence is clear that Nesbit, while concealing his own assignment of the Ford account, urged and persuaded creditors, whose total claims exceeded the amount of the Ford account, not to file legal proceedings to collect their accounts, representing to them that they would get nothing if suit were filed, informed them of the amount of the Ford account which exceeded their individual claims and that they would be paid out of the bankrupt's accounts receivable, including the Ford account, if they waited. In reliance thereon, such creditors took no action and extended additional credit, although such creditors would have filed suit and would have refrained from extending additional credit had they known of Nesbit's assignment.

■ Nesbit acknowledges the power of the Bankruptcy Court to disallow or subordinate claims, if to allow them would shock the conscience of the court, and argues that he has been guilty of no such conduct. To fortify his position, petitioner cites the case of Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281, wherein the court pierced the corporate veil and agreed with the district court in setting aside the claims in bankruptcy of the dominant and controlling stockholder who created a corporate scheme to defraud the creditor Pepper. It is true that in the Pepper case the court exercised its equitable power to defeat a fraudulent scheme, but it must be kept in mind that equitable estoppel can be established without actual fraud or a fraudulent intent. The Tampico, 9 Cir., 270 F. 537; United States, by Use and Benefit of Noland Co. v. Wood, 4 Cir., 99 F.2d 80; Mahoning Inv. Co. v. U. S., 3 F.Supp. 622, 78 Ct.Cl. 231.

■ A court of bankruptcy, in the exercise of its broad equitable powers, may apply the equitable doctrine of estoppel in pais. In re Thornton, D.C., 7 F.Supp. 613; Litzke v. Gregory, 8 Cir., 1 F.2d 112; Larson v. First State Bank, 8 Cir., 21 F.2d 936.

■ The elements of equitable estoppel are set forth in 31 C.J.S., Estoppel, § 67, p. 254:

"In order to constitute an equitable estoppel or estoppel in pais there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice."

The above-mentioned elements are present in this case and the court deems it unnecessary to refer again to the facts already pointed out which are applicable thereto.

Regardless of Nesbit's good faith in making these loans, he should not be permitted to profit at the expense of other unsecured creditors by taking funds which he in effect expressly promised to apply on their accounts.

This is not a case where an officer or director is sought to be placed in a less favorable position solely because of his relationship with the corporation, as is the situation in the cases cited by petitioner, but rather a case in which Nesbit should be denied the right to claim for himself the funds which he had promised would be applied for the benefit of other unsecured creditors in consideration of their extension of additional credit and delay in enforcement of their claims, while remaining silent as to his own unrecorded assignment of the Ford account.

■ This court is of the opinion that the doctrine of equitable estoppel should be invoked and that Nesbit has been guilty of such conduct that the Bankruptcy Court, in the exercise of its broad equitable powers, should invalidate and set aside petitioner's claim of security in its entirety.

For the reasons above stated, the order of the Referee in Bankruptcy is affirmed and an appropriate order may be presented.