### In re ASSESSMENT OF ALLEGED OMITTED PROPERTY OF KENNEDY et al. FOR TAXATION IN OSAGE COUNTY FOR 1917.

No. 24053.   May 12, 1936.

James P. Gilmore and Hayes, Richardson, Shartel, Gilliland & Jordan, for plaintiffs in error.

F. M. Dudley, for Attorney General, and C. K. Templeton, Co. Atty., and McCoy, Craig & Pearson, Special Counsel, for defendant in error.

GIBSON, J. This is a proceeding to assess omitted property pursuant to the tax ferret statute, section 12346, O. S. 1931, brought here from the county court of Osage county.

On December 18, 1916, Samuel G. Kennedy and William A. Springer entered into a written contract with the Osage-Hominy Oil Company whereby Kennedy and Springer agreed to sell, and did thereby sell, to said Osage-Hominy Oil Company one-half interest in and to an oil and gas mining lease covering certain lands in the Osage reservation. The recited consideration was $6,025,000 to be placed in escrow in a New York bank as follows: A note for $2,500,000 and $3,525,-000 in cash, the note and cash to be delivered by the bank to Kennedy and Springer upon the approval of the assignment of the lease by the Secretary of the Interior.

In pursuance of the contract, assignment of the lease was executed on the form prescribed by the rules of the Secretary of the Interior, and delivered to the oil company prior to January 1, 1917, and the assignment was approved by the Secretary January 26, 1917.

Springer thereafter died and his estate closed in probate. The state now seeks to assess the $3,525,000 for ad valorem taxation as of January 1, 1917, as having been the property of Kennedy and Springer on that date, and seeks to charge Kennedy and the heirs of Springer therefor. The trial court ordered the property assessed, one-half to respondent Kennedy, and one-half to the other respondents, the heirs of Springer, deceased. From that judgment the respondents have appealed.

The respondents take the position that the judgment of the trial court is contrary to the law and the evidence. In this connection it is urged that the aforementioned contract between Kennedy and Springer and the Osage-Hominy Oil Company controls the question as to the date title to the funds here in question passed to Kennedy and Springer. It is said that the contract is clear and unequivocal in its terms and that the court erred in receiving parol evidence to change the plain provisions of said contract.

This appeal brings up the entire record for a review of all the evidence, and in such review this court will consider all evidence properly received and reject that improperly received.

Personal property in this state is assessed ad valorem in the name of the owner thereof as of January 1st next preceding the tax year for which it is assessed. Section 9960, C. O. S. 1921 (amended by section 12581, O. S. 1931). In order to assess omitted property under the provisions of section 12346, O. S. 1931, it is incumbent upon the state to establish the taxability thereof on the particular assessment day (In re Daniels' Omitted Property, 108 Okla. 195, 235 P. 543); and that the ownership of such property was in the party sought to be charged on said assessment day.

The principal question involved here is that of ownership of the property on January 1, 1917.

Pursuant to the terms of the written contract, the Osage-Hominy Oil Company, on December 18 and 20, 1916, deposited checks aggregating $3,525,000, the property here sought to be taxed, in the Liberty National Bank of New York; the checks were made payable to that bank, and the sum represented thereby was to be paid by said bank to Kennedy and Springer upon the approval by the Secretary of the Interior of the departmental form of assignment of the oil and gas lease executed by Kennedy and Springer to said oil company. Said departmental assignment had been delivered to the oil company in the month of December, and, as we have said, was approved by the Secretary of the Interior January 26, 1917, at which time, or immediately thereafter, the remittance of the sum above mentioned was made to Kennedy and Springer.

The regulations of the Secretary of the Interior governing the assignment of oil and gas leases in the Osage Nation read as follows:

"Approved leases or any interest therein may be sublet, transferred or assigned with the consent and approval of the Secretary of the Interior, and not otherwise. Subleases, transfers or assignments, when so approved, shall be subject to the terms and conditions of the original leases and the regulations under which such leases were approved, as well as to such additional requirement as the Secretary of the Interior may prescribe. The said lessee, transferee or assignee shall furnish with his sublease, transfer or assignment a satisfactory bond as hereinbefore prescribed in connection with

leases. Any attempt to sublet, transfer or assign any approved lease or any interest therein without the consent and approval of the Secretary of the Interior shall be absolutely void, and shall subject the original to cancellation in the discretion of such Secretary."

The written contract provided, in addition to the provisions heretofore mentioned, that Kennedy and Springer "have agreed to and do hereby sell" to the Osage-Hominy Oil Company one-half interest in the lease; that they immediately execute departmental form of assignment thereof to be delivered to the oil company upon its deposit of $500,000 in said bank. This sum constituted a portion of the amount here in question. The deposit was made and the assignment delivered in December, 1916. The oil company was to receive one-half of all the oil in tanks or produced from the leased premises from and after 7 o'clock a. m., December 18, 1916, less one-half of operating expense for that period. Kennedy and Springer warranted title to the lease and that they had the right to assign the same, "subject to the approval of the Secretary of the Interior." Section 9 of the contract provided in full as follows:

"It is understood and agreed by and between the parties hereto that this contract is made with the intention in good faith of in no way contravening the laws, rules and regulations of the Department of the Interior with reference to the approval of oil and gas mining leases in the Osage Nation, and is made subject to all the rules and requirements governing the same."

The departmental assignment executed by Kennedy and Springer contained the following provision:

"The assignee in the above and foregoing assignment, made subject to the approval of the Secretary of the Interior, hereby accepts such assignment and agrees to fulfill all the obligations, conditions and stipulations in said described indenture of lease, when assigned, and the rules and regulations of the Secretary of the Interior, so far as applicable thereto, and to furnish proper bond guaranteeing a faithful compliance with said lease and this agreement."

The respondents contend that the approval of the assignment of the lease was a condition precedent to the vesting of title to the money and the lease in the respective parties. A condition precedent must be literally performed before an estate will vest in law or in equity. Paraffine Oil Co. v. Cruce, 63 Okla. 95, 162 P. 716.

On the other hand, the state contends that the written contract vested in the respective parties a feasible title to the money and to the lease, which title was subject to defeasance by failure of the Secretary of the Interior to approve the assignment; that is to say, the approval, or rather the disapproval, of the assignment was a condition subsequent which, if the disapproval occurred, would operate to defeat the title or estate already created.

A "condition subsequent" operates upon estates already created and lays them open to defeat; a "condition precedent" is one that must be performed before the estate can vest. Wellsville Oil Co. v. Miller, 44 Okla. 493, 145 P. 344; Fraley v. Wilkinson, 79 Okla. 21, 191 P. 156.

Whether or not a condition is one precedent or subsequent depends upon the intention of the party or parties creating the condition (Wellsville Oil Co. v. Miller, supra); and where there is doubt as to whether a condition is precedent or subsequent, as a rule, the courts "will place that interpretation upon the contract rendering the performance a condition subsequent." Gypsy Oil Co. v. Escoe, 126 Okla. 3, 258 P. 906.

In the instant case, if neither party was bound by the written contract until the assignment was approved by the Secretary of the Interior, then such approval was a condition precedent. Jones v. U. S., 96 U. S. 24, 24 L. Ed. 644. The intention of the parties in such case is the true test, and that intention must be gathered from the context of the instrument creating the condition under the general rules applicable to the construction of written instruments, which require that not only the clause creating the condition be considered, but the entire instrument together with the nature of the act to be done and the subject-matter to which it relates. 12 C. J. 408, sec. 2.

Where the intention of the parties is made clear by the terms of a written contract, as a general rule, parol evidence is inadmissible to show intent contrary to that indicated by the plain provisions of the contract. Mann v. Brady, 80 Okla. 299, 196 P. 346. Such is the position assumed by the respondents in the instant case.

The state, over the objection of respondents, introduced in evidence a brief submitted by respondents to the federal authorities in a controversy concerning income tax sought to be collected from respondents for the year 1917, based upon the same transaction here under consideration. The brief was offered for the reason that "it purports to set out the facts concerning this

controversy and the construction placed on those facts by the taxpayers." The state also introduced in evidence an opinion by, the Attorney General of the United States relative to the effect of the lease transaction, in the preparation of which opinion the above-mentioned brief had been considered. This opinion, probably only advisory, held the transaction one taking place in 1916, the date of the contract, and that the approval by the Secretary of the assignment was a condition subsequent.

Respondents object to this evidence as not competent to show an estoppel against them, and that it was not admissible to vary the plain provisions of a written contract.

We think the state has not seriously urged an estoppel; it is urged, however, that the brief was admissible to show the real intention of the parties to the assignment contract as to the effective date thereof, that is, their intention relative to the passing of title to the lease and to the consideration placed in the bank. In this respect the contention of the state is correct. The parol evidence rule does not apply here. 22 C. J. 1291, sec. 1725. The almost universally recognized rule is there stated as follows:

"The rule excluding parol evidence to vary or contradict a written instrument applies only in controversies between the parties to the instrument and those claiming under them. It has no application in controversies between a party to the instrument on the one hand and a stranger to it on the other, for the stranger not having assented to the contract is not bound by it, and is therefore at liberty when his rights are concerned to show that the written instrument does not express the full or true character of the transaction."

The state was not a party to the contract in question.

The parties to a written contract may defeat taxes claimed by the state as resulting from such contract by showing an intention other than that expressed in the contract. 10 R. C. L. 1020, sec. 213, n. 9. Conversely, the state should be accorded the same privilege.

In the brief heretofore mentioned, the respondents asserted that the approval by the Secretary was a condition subsequent; that title to the lease vested in the oil company and title to the purchase price vested in the respondents December 16, 1916, and the approval of the assignment on January 26, 1917, related back to the date of the assignment. In this connection, we find in the brief introduced in evidence as exhibit 7, the following statements:

"Furthermore, from December 18, 1916, when the contract of sale and the assignment were executed, the purchaser placed its own representative on the property conveyed, and was in complete possession of the property, receiving all the avails therefrom, and paying all the expenses in operating the lease, in accordance with the contract. During the year 1916, under this contract, the Osage-Hominy Oil Company, the purchaser, had a gross income of $46,297.04, and an expense of $3,029.83, or a net income of $43,267.21, on which it paid income taxes to the federal government. Never has the government offered to refund this tax to the purchaser, and never has it tried to collect the same from the taxpayers now vexed. * * *

"We have, therefore, a contract of sale fully executed on December 18, 1916, and the assignment conveying the property sold, executed and delivered, to the depository, on the same date, and actually delivered to the purchaser on Dec. 20th, 1916. On this last-named date, the purchaser made the delivery of the balance of the consideration to the bank, as trustee, and then holding as such depositary, the entire consideration, and, at that time, everything the vendors had passed from them, and the entire consideration passed from the purchaser. The contention, therefore, that the sale was not really made, and the title did not pass until the approval of the Secretary, and that the consideration was received in 1917, cannot be maintained, but it inevitably follows that the sale was fully consummated on the 18th day of December, 1916, and the entire consideration was received not later than December 20, 1916. * * *

"The contract involved was not to sell in the future, but the very terms thereof made it a sale in praesenti, and both 'the burdens and benefits of ownership' were 'from a practical standpoint transferred to the buyer,' on the 18th day of December, 1916. The purchaser, under the contract, received the proceeds from all the oil in the tanks, and all that was produced on the lease from that date, and bore its one-half of the operating expenses, from that date, and placed its own agent on the lease instead of the representative of the vendors, the Tidal Oil Company, at that time doing the active work of operation and development. Not only was this true, but the assignment, which is the same as the deed referred to in the solicitor's opinion, constructively passed to the purchaser on the 18th day of December, 1916, and was actually and manually delivered to it on the 20th day of December, 1916. So, both conditions are met by the facts of the present cases."

There are many like statements contained in the brief.

78

The foregoing may be said to be merely an admission of law for which the respondents are not bound unless they succeeded in sustaining that position in the cause where it was urged (21 C. J. 1223; 22 C. J. 298, sec. 325); but when considered with other statements in the exhibit, they amount to an admission of the fact of real intention of the parties. There are further statements in the brief as follows:

"It was not only the intention of the parties to make the contract of sale an executed one, and to pass the title both to the interests in the lease and the consideration in praesenti, but that was actually done by the very terms of the contract itself. No one can read it, and construe it by the decisions of the courts applicable thereto, and reach any other conclusion.

"* * * The attorneys for both parties were instructed to prepare a contract that would be a completed and executed sale from 7 o'clock a. m., December 18, 1916, so that the title to the interests of the vendors would pass to the purchaser from that time, and that the title and the consideration would pass to the vendors at and from exactly the same time."

The statements are admissions of fact showing the real purpose and intent of the parties as to when title actually passed under the written agreement. Whether these admissions were judicial or extrajudicial admissions has no bearing upon the question of their competency, but merely affects their weight. By their introduction in evidence the state thereupon sustained the burden placed upon it to show ownership of the property in the taxpayer on assessment day. Admissions against interest are presumed true and no further evidence to establish the fact admitted is necessary. 22 C. J. 425. The respondents made no effort to refute the admissions or to relieve them of their weight by evidence of mistake in their utterance. In such case the facts admitted must stand as true.

Here the property in the bank belonged to someone on January 1, 1917. It obviously did not belong to the bank. It was placed beyond control of the oil company; it was not under control of the respondents; but respondents have said that it belonged to them and not to the oil company from and after December 18, 1916. They now make no attempt to show that they were mistaken in that statement. If the property was theirs on January 1, 1917, it was subject to assessment on that day for ad valorem taxation for the succeeding tax year. The fact that possession thereof was withheld from the respondents on assessment day made the property nonetheless their own on that day. The general rule expressed in State v. King, 141 Okla. 185, 284 P. 287, applies to the situation here. There we said:

"The general rule is that, when claims become liquidated and liability definitely fixed, they are taxable at their fair cash value, although not immediately payable. 37 Cyc. 783."

In view of this state of the record, we must hold that the judgment of the trial court holding the deposits in the New York bank to be the property of Kennedy and Springer on January 1, 1917, was not against the clear weight of the evidence.

The heirs of W. A. Springer insist the judgment of the trial court as to them was error in that the assessment thereby ordered against them personally was without authority of law.

The obligation to pay taxes is purely statutory, and taxes can be levied, assessed, and collected only in the modes pointed out by statute. Cooley on Taxation (2d. Ed.) p. 15. Taxing officials in levying and collecting taxes must act strictly within the limitation of the authority conferred upon them by law. Nelson v. O. C. & W. Ry. Co., 24 Okla. 617, 104 P. 42; Prince v. St. L. & S. F. Ry. Co., 110 Okla. 141, 237 P. 106; Empire Pipe Line Co. v. Excise Board, 168 Okla. 485, 34 P. (2d) 585.

There is no statute in this state authorizing personal assessment against heirs for taxes due upon personal property formerly belonging to their deceased ancestor. As we have already said, taxes are assessed against personal property in the name of the owner thereof as of January 1st next preceding the tax year for which it is assessed. Where such property escapes taxation for a given year, and the property was a subject of taxation, the taxes that should have been paid thereon constitute a debt due the state from the person who owned the property on the particular assessment day. Anderson v. Ritterbusch, 22 Okla. 761, 98 P. 1002.

In the instant case Springer owned the property on the particular assessment day. It escaped taxation to the state and Springer was indebted to the state in the amount he should have paid. Such debt survived and was a proper charge against his estate. Gamble v. Patrick, 22 Okla. 915, 99 P. 640; Van Hoozer v. Myers, 98 Okla. 243, 224 P. 977. The state has admitted that Springer's estate had been fully administered and closed when this proceeding was instituted. It intimates that the heirs should now be per-

sonally assessed for Springer's taxes upon grounds equitable in nature. That contention cannot be urged here. This is not an equitable proceeding. The state has sought in this proceeding to assess the heirs under the statute relating to the assessment of omitted property, under which the taxes, if assessable, can only be assessed against the estate.

There being no authority in the taxing officials to assess the tax against the heirs of Springer, the court was without jurisdiction of the subject-matter, and the judgment must be reversed as to said heirs.

Prior to the commencement of the present proceeding the state had sought in a similar proceeding to assess the respondents for property described in the treasurer's notice to the taxpayer as "mortgages, notes, credits, and accounts" for 1917. It is now urged that the order of the county treasurer finding no omitted property for that year is res judicata of the question here involved, for the reason the judgment of the treasurer became final in that it was not appealed from. See In re Assessment of Property of Kennedy et al., 167 Okla. 248, 29 P. (2d) 112.

Respondents say that the treasurer in such proceedings acts judicially (Hopper v. Oklahoma County, 43 Okla. 288, 143 P. 4); that the treasurer's notice to the taxpayer constitutes the state's basic pleading (Hamilton v. International Bank, 114 Ok'a. 28, 242 P. 858), and that the property here under consideration was comprehended within the description of property contained in the former notice. They assume the position that the question here was adjudicated by the judgment of the treasurer in the former proceeding, which, they say, was a judgment on the merits. We find it unnecessary to decide that question. An examination of the record clearly reveals that the property presently involved constituted no part of the subject-matter in the former case.

In view of the foregoing, the judgment of the trial court as to the property of the respondent, Kennedy, should be affirmed, and as to the respondents. the heirs of Springer, the judgment should be reversed. It is so ordered.

McNEILL. C. J.. OSBORN, V. C. J., and RILEY, BUSBY, WELCH, PHELPS, and CORN, JJ., concur. BAYLESS, J., absent.