**SKELLY OIL CO. et al. v. PHILLIPS PE-
TROLEUM CO.**

No. 3751.

United States Court of Appeals
Tenth Circuit.

March 28, 1949.

Rehearing Denied May 9, 1949.

Charles L. Black, of Austin, Tex., and W. P. Z. German and Hawley C. Kerr, both of Tulsa, Okl. (Alvin F. Molony, Donald Campbell and Ray S. Fellows, all of Tulsa, Okl., Dan Moody, of Austin, Tex., and Walace Hawkins and Earl A. Brown, both of Dallas, Tex., on the brief), for appellants.

George L. Sneed, of Madill, Okl., and Harry D. Turner, of Oklahoma City, Okl. (Don Emery, Rayburn L. Foster and R. B. F. Hummer, all of Bartlesville, Okl., S. E. Floren, Jr., of Oklahoma City, Okl. and Eugene O. Monnet, and Jack N. Hays, both of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

Phillips Petroleum Company and Michigan-Wisconsin Pipe Line Company[1] brought this action against Skelly Oil Company, Stanolind Oil and Gas Company, and Magnolia Petroleum Company[2] for a declaratory judgment. From a judgment in favor of the plaintiffs, the defendants have appealed.

Federal jurisdiction is challenged. Hence, we must examine the allegations of the complaint. The alleged facts as set forth in the complaint are these:

The action arises under the Natural Gas Act,[3] and the matter in controversy between each plaintiff and each defendant exceeds, exclusive of interest and costs, the sum of $3,000.

Each of the several parties to the action, except Magnolia, is a corporation organized and existing under the laws of Delaware. Magnolia is a corporation organized and existing under the laws of Texas. Phillips, Skelly, Stanolind, and Magnolia are duly authorized to transact business in the State of Oklahoma. The actions are brought under § 274d of the Judicial Code, 28 U.S.C.A. § 400.[4] There is an actual controversy existing between the parties arising out of a like transaction or occurrence and involving a question common to all parties in respect to which each plaintiff needs a declaration of its rights by the court.

During and prior to the month of December, 1945, Pipe Line Company was desirous of obtaining from the Federal Power Commission[5] a certificate of public convenience and necessity, under the requirements of the Act, for a pipe line system to be constructed and operated by it, extending from a point in the State of Texas to points in the States of Michigan and Wisconsin, or either of them, and intermediate points. In order to obtain such certificate, it was necessary that Pipe Line Company have available adequate reserves of natural gas. During that month, Phillips was negotiating a contract with Pipe Line Company which would obligate Phillips to make available to Pipe Line Company reserves of natural gas in the Hugoton Field, which extended over parts of the States of Kansas, Oklahoma, and Texas, including both gas to be produced by Phillips and purchased by it from others.

On December 5, 1945, Phillips and Skelly entered into a written contract whereby Phillips agreed to purchase, and Skelly agreed to sell, gas to be produced from its properties in the Hugoton Field, consisting of leases covering approximately 46,528 acres of land. On the same date, Phillips and Stanolind entered into a written contract whereby Phillips agreed to purchase, and Stanolind agreed to sell, gas to be produced from its properties in such

---

[1] Hereinafter referred to respectively as Phillips, and Pipe Line Company. Collectively, they will be referred to as the plaintiffs.

[2] Hereinafter referred to respectively as Skelly, Stanolind, and Magnolia. Collectively, they will be referred to as the defendants.

[3] 52 Stat. 821 et seq., 15 U.S.C.A. §§ 717 to 717w, as amended, hereinafter called the Act.

[4] Now found in part in §§ 2201 and 2202 of the Revised Judicial Code.

[5] Hereinafter called the Commission.

Field, consisting of leases covering approximately 118,000 acres. On December 7, 1945, Phillips and Magnolia entered into a written contract whereby Phillips agreed to purchase, and Magnolia agreed to sell, gas to be produced from its properties in such Field, consisting of approximately 25,000 acres. In each of such contracts, reference was made to the desire of Pipe Line Company to obtain from the Commission a certificate of public convenience and necessity, under the requirements of the Act, for the pipe line system which it proposed to construct and operate.

On December 11, 1945, Phillips entered into a contract with Pipe Line Company whereby Phillips contracted to supply Pipe Line Company with gas and obligated itself to provide gas reserves including the gas to be purchased by it under the contracts of December 5 and 7. Pipe Line Company has an interest in the contracts of December 5 and 7.

The contract of December 11 contained the following provision:

" * * * upon the happening of any one of the following contingencies, to-wit:

"(a) the failure of Buyer to procure from the Federal Power Commission, on or before September 1, 1946, a certificate of public convenience and necessity for the construction and operation of the Pipe Line, or

"(b) the issuance by the Federal Power Commission of an order refusing to grant a certificate of public convenience and necessity for the Pipe Line, or

"(c) the failure of Buyer to commence the actual construction of the Pipe Line on or before March 1, 1947, or

"(d) the failure of Buyer to commence, on or before January 1, 1948, the acceptance of deliveries of gas hereunder for delivery by Buyer for resale in one or more municipalities east of the Missouri River, "Seller shall have the right to terminate this contract by written notice to be delivered to Buyer not later than thirty days after the happening of such contingency."

Each of the contracts of December 5 and 7 provides that the contract of December 11 shall contain the provision quoted

above; and § 2, Article II, of each of the contracts of December 5 and 7 provides that if the contract of December 11 shall be terminated upon the happening of one of the four stipulated contingencies, then, and in either of those events, either party shall have the right to terminate "this contract by written notice to be delivered to the other party * * * within thirty (30) days after the termination of the pipe line contract as aforesaid; provided, however, that, in the event this contract shall not be terminated for any of the foregoing reasons on or before October 1, 1946, and in the event * * * Pipe Line Company shall fail to secure from the * * * Commission on or before that date a certificate of public convenience and necessity for the construction and operation of its pipe line, Seller shall have the right to terminate this contract by written notice to Buyer delivered to Buyer at any time after December 1, 1946, but before the issuance of such certificate. * * *"

The contract of December 11 between Phillips and Pipe Line Company recites that Pipe Line Company "proposes to construct and operate a gas pipe line system (herein referred to as the pipe line) extending from the point of delivery * * * in the Hugoton Gas Field in Hansford County, Texas, in a northeasterly direction to points of connection with distribution systems in Wisconsin and Michigan, or either of them, and at intermediate points." The proposed pipe line was described in substantially the same language in the contracts of December 5 and 7.

Pipe Line Company, pursuant to the terms and requirements of the Act, instituted proceedings before the Commission to obtain a certificate of public convenience and necessity. In accordance with the requirements of the Act and the rules, regulations, and procedure of such Commission, adopted pursuant to the Act, and, on November 30, 1946, the Commission made an order granting such application and "issued said certificate of public convenience and necessity" to Pipe Line Company and caused notice thereof to be given on such date. On December 2, 1946, each of the defendants sent a telegram to Phillips, which referred to its contract with Phillips,

stated that no certificate of public convenience and necessity had been issued to Pipe Line Company, and that it elected to terminate and did terminate its contract with Phillips under § 2, Article II, thereof. On December 3, 1946, Phillips sent a telegram to Skelly in which it stated that, prior to December 2, 1946, Pipe Line Company secured from the Commission a certificate of public convenience and necessity for the construction and operation of the pipe line, and thereby precluded Skelly's right to terminate its contract with Phillips, under § 2, Article II, thereof, and that the telegram of December 2 did not operate to terminate or cancel such contract. It sent like telegrams on the same day to Stanolind and Magnolia. Each of the defendants was asserting, in effect, that no certificate of public convenience and necessity within the requirements of the Act had been secured by Pipe Line Company from the Commission by December 2, 1946, and that accordingly each had the right to and did terminate its contract with Phillips and was no longer obligated by its contract; and that the actions and proceedings of the Commission on November 30, 1946, and prior to the telegraphic notices of cancellation did not amount to the issuance by the Commission of a certificate of public convenience and necessity. Each of the plaintiffs, on the other hand, was asserting that, prior to such notices of cancellation, a certificate of public convenience and necessity was issued by the Commission to Pipe Line Company consonant with and in compliance with the requirements of the Act and with the rules, regulations, and procedure of the Commission under the Act, which was a certificate of public convenience and necessity within the meaning of the Act and such contracts.

In their complaint, Phillips and Pipe Line Company further alleged: "* * * that if said Natural Gas Act, and the requirements thereof, be properly construed and applied and be given appropriate effect, the actions and proceedings of said Federal Power Commission prior to any notice to the plaintiff Phillips by any of the defendants did constitute the issuance to the plaintiff pipe line company by said commission of a certificate of public convenience and necessity 'within the requirements of the Natural Gas Act' and as provided for in said contract and precluded any right on the part of any of the defendants to terminate its said contract between it and the plaintiff Phillips. * * *"

The prayer for relief was that the contracts between Phillips and the defendants be determined to be in effect and binding upon the parties thereto and that the defendants be enjoined from further asserting that the certificate was not issued to Pipe Line Company in accordance with the requirements of the Act and the contracts of December 5 and 7, and from asserting that they were not bound by such contracts.

The findings of the Commission in its order of November 30, 1946, in substance, are these:

Pipe Line Company proposes to serve natural gas areas within Wisconsin and a substantial demand exists for such service. Pipe Line Company also proposes to add greatly to the supplies of natural gas available for service within Michigan, where a demand for such enlarged service has been demonstrated. Panhandle Eastern Pipe Line Company [6] has reasonably met its contractual obligations to supply natural gas to Michigan Consolidated Gas Company [7] for resale in the Ann Arbor and Detroit, Michigan, service areas, and has expressed a willingness to meet the enlarged requirements of such service areas. Panhandle is entitled to reasonable protection in the service of the market in such service areas and to an opportunity to participate in its growth. While Panhandle has applied for and received authority to enlarge its facilities, which will enable it to increase its deliveries to those service areas, it has not applied for sufficient facilities or demonstrated its ability to serve adequately the needs of those service areas in addition to the expanding requirements in other areas which it supplies. Augmentation of the supply of natural gas to those service

---

[6] Hereinafter called Panhandle, and intervener in the proceeding before the Commission.

[7] Hereinafter called Michigan Consolidated.

areas through the facilities proposed to be constructed and operated by Pipe Line Company will be in the public interest, provided proper protection and recognition are given to Panhandle's rights and obligations in those service areas, and such protection and recognition should be provided for by appropriate conditions.

Pipe Line Company has secured substantial reserves of natural gas and has submitted reasonable proof of the financial and economic feasibility of its proposed construction and operation when all necessary approvals and consents shall have been secured. It has not yet obtained all the necessary approvals of operation from the State of Wisconsin, and the communities to be served therein, or of its proposed financing by the Securities and Exchange Commission. The authorization "herein granted" should be expressly conditioned upon the obtaining of all such necessary approvals. The rate structure submitted by Pipe Line Company is not satisfactory, but it has stated its willingness to comply with the requirements of the Act and the rules and regulations of the Commission thereunder. The order herein should be conditioned so as to provide for the submission of revised rate schedules.

Pipe Line Company is able and willing properly to do the acts and perform the service proposed and to conform to the provisions of the Act, as amended, and the requirements, rules, and regulations of the Commission thereunder.

The proposed construction and operation of the facilities by Pipe Line Company "are required by the public convenience and necessity and a certificate therefor should be issued as hereinafter ordered and conditioned."

The order of November 30, in part, read:

"(A) A certificate of public convenience and necessity be and it is hereby issued to Applicant, upon the terms and conditions of this order, authorizing it to:

"(1) Construct and operate the following facilities:

"(a) A main natural-gas transmission on pipe-line extending from a point at or near Section 8, Block 1, Public Free School Land Survey, Hansford County, Texas, to its terminus at the Austin Storage Field, located near Big Rapids, Michigan, and including only the initial compressor station to be located near Section 8, Block 1, Public Free School Land Survey, Hansford County, Texas, and the compressor station designated in the application, as amended, as No. 8, to be located near Mt. Pleasant, Iowa;

"(b) The so-called Wisconsin branch natural-gas transmission pipeline;

"(c) Lateral natural-gas transmission pipe-lines and appurtenances necessary to render service as proposed to the communities named in the application, as amended, excepting Mt. Pleasant, Ann Arbor, and Detroit, Michigan;

"(2) Operate the existing facilities located in the Austin and Reed City Storage Fields now owned by the Michigan Consolidated Gas Company, and including certain transmission pipelines and metering stations, as described in Schedule A of the contract between Applicant and Michigan Consolidated, dated December 4, 1945; * * * "

The order was made subject, among others, to the following conditions:

That the authorizations referred to in the findings shall be obtained from the State of Wisconsin and each of the communities proposed to be served in such state; that Pipe Line Company shall obtain approval of its proposed plan of financing by the Securities and Exchange Commission; that the facilities referred to in paragraph (A) (2) shall not be used for the transportation or sale of natural gas subject to the jurisdiction of the Commission, except upon the approval by the Commission of lease agreements between Pipe Line Company and Michigan Consolidated, which agreements shall be filed with the Commission on or before December 16, 1946; that Pipe Line Company within six months after the "issuance of this certificate" shall submit to the Commission an adequate and reasonable schedule of rates and charges consistent with the public interest.

The order also imposed the following condition:

"(B) * * *

"(viii) This certificate is granted upon the express condition that the facilities herein authorized shall not be used for the transportation for or sale of gas to the Michigan Consolidated Gas Company for resale in Detroit and Ann Arbor except with due regard to the rights and duties of Panhandle Eastern in its established service for resale in Detroit and Ann Arbor, Michigan, under its presently existing contract with Michigan Consolidated and in accordance with the provisions of the Natural Gas Act; and such rights and duties shall by supplemental order, to be issued within fifteen days from the date of this order, be determined on the basis of:

"(1) Panhandle's rights, obligations and service under its Grandfather certificate and subsequent certificates when such certificates were granted by this Commission;

"(2) Panhandle's contractual and actual deliveries of natural gas for resale in the years 1942, 1943, 1944, 1945, and 1946;

"(3) Panhandle's rights and obligations at the date of termination of the existing contract, on December 31, 1951.

"Jurisdiction is specifically reserved by the Commission to reopen these proceedings, if need be, for the purpose of such determination.

"(ix) Applicant shall, within fifteen days after the issuance of the supplemental order herein, notify the Commission in writing whether the certificate as herein issued is acceptable to it."

The order further provided: "(C) For the purpose of computing the time within which applications for rehearing may be filed, the date of issuance of this order shall be deemed to be the date of issuance of the opinions, or of the supplemental order referred to herein, whichever may be the later."

On December 14, 1946, the Commission adopted an order, issued December 16, which amended paragraph (B) (viii) of the order of November 30, by striking out "fifteen days" and inserting "thirty days." On December 30, the Commission adopted another order which modified and supplemented the order of November 30, by adding thereto eight additional findings, all relating to Panhandle's "grandfather" certificate and its contracts with and gas deliveries to Michigan Consolidated, and future relations between Panhandle and Michigan Consolidated. It also further ordered that the proceeding on the application of Panhandle be reopened, to be limited to the receipt of evidence with respect to paragraph (B) (viii). It expressly provided in such order that nothing contained therein should be construed as changing or affecting its order of November 30, 1946, "issuing a certificate of public convenience and necessity to" Pipe Line Company.

On December 27, 1946, Panhandle filed an application for the vacation of the November 30 order, or, in the alternative, for a rehearing. Afterwards, Panhandle also filed a like application with respect to the order of December 30. Such applications were denied by the Commission, January 14, 1947, on the ground that they were premature, because of the provisions of paragraph (C) of the order of November 30.[8]

On January 17, 1947, the Commission adopted its Opinion 147, which was issued February 7, 1947. On February 20, 1947, the Commission adopted the supplemental order provided for in paragraph (B) (viii) of the order of November 30 and on the same day adopted a supplemental opinion which dealt with the matters reserved for decision in paragraph (B) (viii). Such supplemental opinion and order were issued on March 12, 1947.

In its supplementing order issued March 12, 1947, the Commission recited its "order of November 30, 1946 issuing a certificate of public convenience and necessity," to Pipe Line Company and ordered that subparagraph (viii) of paragraph (B) thereof be supplemented in substance as follows:

---

[8] Panhandle filed under § 19 of the Natural Gas Act, 15 U.S.C.A. § 717 et seq., a petition for review of the order of November 30 in the United States Court of Appeals for the District of Columbia. On April 21, 1947, that court dismissed the petition for review on the ground that the order of November 30 was not final. Certiorari therefrom was denied by the Supreme Court, October 13, 1947.

That the facilities authorized should not be used for the transportation or sale of natural gas in the Detroit and Ann Arbor areas except upon the following terms and conditions: That Panhandle be permitted to deliver natural gas to Michigan Consolidated in accordance with the terms and conditions of its existing contracts during the life thereof; that upon the termination of such contracts and upon mutually satisfactory terms, Panhandle be afforded reasonable opportunity to deliver and sell to Michigan Consolidated not less than the annual volumes delivered and sold by it for either the years 1942 or 1945, or the average delivery for the five-year period 1942 through 1946; that Panhandle have the right to participate in the Detroit and Ann Arbor areas by being given the opportunity to deliver and sell such additional volumes of gas to Michigan Consolidated as the latter might require in excess of the volumes of gas then being contractually purchased by it from Phillips and Pipe Line Company in order to maintain adequate service in the Detroit and Ann Arbor areas.[9]

The pertinent provisions of the Act read as follows:

"§ 717f. * * *

"(c) No natural-gas company or person which will be a natural-gas company upon completion of any proposed construction or extension shall engage in the transportation or sale of natural gas, subject to the jurisdiction of the Commission, or undertake the construction or extension of any facilities therefor, or acquire or operate any such facilities or extensions thereof, unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations. * * *

"(e) * * * a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operation, sale, service, construction, extension, or acquisition covered by the application, if it is found that the applicant is able and willing properly to do the acts and to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, sale, operation, construction, extension, or acquisition, to the extent authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied. The Commission shall have the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require.

"(f) The Commission, after a hearing had upon its own motion or upon application, may determine the service area to which each authorization under this section is to be limited. * * *"

"§ 717o. The Commission shall have power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this chapter. * * * Orders of the Commission shall be effective on the date and in the manner which the Commission shall prescribe. * * *"

"§ 717r.

"(a) Any person, State, municipality, or State commission aggrieved by an order issued by the Commission in a proceeding under this chapter to which such person, State, municipality, or State commission is a party may apply for a rehearing within thirty days after the issuance of such order."

## I
### Jurisdiction

A factual element essential in an action for a declaratory judgment is the existence of an actual controversy.[10] It

---

9 The order of November 30 and the order supplemental thereto were sustained as between Panhandle and the Commission by the United States Court of Appeals for the District of Columbia. See Panhandle Eastern Pipe Line Company v. Federal Power Commission, 4 Cir., 169 F.2d 881. Certiorari was denied October 25, 1948.

10 28 U.S.C.A. § 2201; Ohio Casualty Ins. Co. v. Marr, 10 Cir., 98 F.2d 973, 975, and cases therein cited; Mary-

was, therefore, necessary for the plaintiffs to allege the facts with respect to the claims asserted by them and the claims asserted by the defendants in order to reflect the existence of the actual controversy. It was also necessary for the plaintiffs to allege the grounds upon which they challenged the claims asserted by the defendants, not as an anticipated defense to such claims, but as the basis for the claim of the plaintiffs that the adjudication of the existing controversy should be in their favor and as a part of their affirmative claim.[11]

■ An action for a declaratory judgment is analogous to an action to remove a cloud on title.[12] The plaintiff in an action to remove a cloud on title must allege the writing or matter which constituted the alleged cloud, the facts which give it apparent validity, and those which show its invalidity.[13] An allegation of the facts which show the invalidity of the cloud is not an anticipation or avoidance of a defense.[14] Hence, we conclude that none of the allegations in the complaint were in anticipation or avoidance of defenses.

■■ Whether the order of the Commission of November 30, 1946, constituted a certificate of convenience and necessity to Pipe Line Company, within the requirements of the Act, for the construction and operation of the pipe line described in the contracts of December 5, 7, and 11, is the primary question presented and is the gist of the existing controversy. The questions whether the telegraphic notices of December 2, 1946, effected a cancellation of the contracts of December 5 and 7, or whether such contracts remain in force were wholly dependent upon the determination of the primary question. If the primary question is resolved in favor of the plaintiffs, the defendants do not dispute that such contracts remain in force. If it is resolved in favor of the defendants, the plaintiffs do not dispute that the contracts were effectively cancelled. Therefore, the action is to secure an adjudication of an existing controversy with respect to such primary question. It is not an action to enforce or to construe the contracts of December 5 and 7, or for the breach thereof. It is not a claim arising out of, or dependent upon, state law. Rather, it is a claim arising out of, and dependent upon, the construction and application of Federal law, to wit, the Act and valid rules and regulations of the Commission promulgated thereunder. The regulations and rules promulgated by a Commission pursuant to its statutory authority have the force and effect of Federal law.[15] Hence, we do not regard Federal jurisdiction as dependent upon the rulings in Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759; Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 199–201, 41 S.Ct. 243, 65 L.Ed. 577; and Brushaber v. Union Pacific R. R. Co., 240 U.S. 1, 10, 36 S.Ct. 236, 60 L.Ed. 493, L.R.A., 1917D, 414, Ann.Cas. 1917B, 713, approved in Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 320, 321, 56 S.Ct. 466, 80 L.Ed. 688.

Title 28 U.S.C.A. § 41 [now § 1331], in effect when the judgment was entered herein, provided:

"The district courts shall have original jurisdiction * * *

"(1) * * * Of all suits of a civil nature, at common law or in equity, * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States, * * * *"

■ To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be

land Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 272, 61 S.Ct. 510, 85 L.Ed. 826; Nashville, C. & St. P. Ry. Co. v. Wallace, 288 U.S. 249, 260, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191; United Public Workers of America v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754. See 87 A.L.R. 1205.

11 Ter Haar v. Kettleman North Dome Ass'n, D.C.Cal., 34 F.Supp. 823, 824.

12 Davis v. American Foundry Equipment Co., 7 Cir., 94 F.2d 441, 443.

13 Hopkins v. Walker, 244 U.S. 486, 490, 491, 37 S.Ct. 711, 61 L.Ed. 1270.

14 Hopkins v. Walker, 244 U.S. 486, 490, 491, 37 S.Ct. 711, 61 L.Ed. 1270; Lancaster v. Kathleen Oil Co., 241 U.S. 551, 554, 555, 36 S.Ct. 711, 60 L.Ed. 1161.

15 Regents of New Mexico College v. Albuquerque Broadcasting Co., 10 Cir., 158 F.2d 900, 906.

an element and an essential one of the plaintiff's cause of action; the right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction and effect and defeated if given another; a genuine and present controversy, not merely a possible or conjectural one, must exist with respect thereto; and the controvery must be disclosed from the face of the complaint unaided by the answer.[16]

For the reasons indicated above, we think the instant case comes within those tests and that the district court had jurisdiction.

## II

### The Merits

It will be noted that the Commission, in its findings incorporated in the order of November 30, 1946, found every fact prerequisite under the terms of the Act to the issuance to Pipe Line Company of a certificate of public convenience and necessity for the construction and operation of the pipe line described in each of the contracts, and that the order in the present tense states "a certificate of public convenience and necessity be and it is hereby issued to" Pipe Line Company upon the terms and conditions set forth in the order. Moreover, in its orders of December 14 and December 30, 1946, and March 12, 1947, it refers to the order of November 30, 1946, as an order "issuing a certificate of public convenience and necessity" to Pipe Line Company and, in the order of December 30, it expressly provides that nothing therein contained shall be construed as changing or affecting the Commission's order adopted November 30, 1946, "issuing a certificate of public convenience and necessity" to Pipe Line Company.

An intent to grant such certificate on November 30, 1946, to be immediately effective, seems clear from the language of that order and the orders issued subsequent thereto.

A certificate of public convenience and necessity under the Act is permissive, rather than contractual, in character. The verb "issue" means "to set forth, to emit, to go forth authoritatively." [17]

The question is whether the terms and conditions imposed prevented the certificate from becoming effective on November 30, 1946.

The Act expressly provides that if the facts prescribed therein are found, a certificate shall be issued, and that the Commission shall have power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder, such reasonable terms and conditions as the public convenience and necessity may require.

The duty of the Commission to issue the certificate followed the prerequisite findings which it made. The right to attach reasonable terms and conditions was within the granted powers of the Commission. The Commission has followed a practice of issuing certificates and attaching terms and conditions, to the exercise of the rights granted, to be complied with thereafter.

The contracts of December 5 and 7 did not provide for the issuance of an unconditional certificate. Neither did they require that conditions, if imposed, should be complied with on or before December 1, 1946. In ascertaining whether the conditions imposed were conditions precedent to the issuance of the certificate, or conditions subsequent thereto and to be complied with after issuance, we should examine the nature of the acts to be done and the intention of the Commission as manifest by the language of its order.[18] The conditions imposed were conditions to the exercise of the rights granted. The language of the order plainly manifests an intent to grant a certificate immediately effective. The authorizations to be obtained from the State of Wisconsin and from municipalities of such state would

16 Gulley v. First National Bank in Meridian, 299 U.S. 109, 112-114, 57 S.Ct. 96, 81 L.Ed. 70, Regents of New Mexico College v. Albuquerque Broadcasting Co., 10 Cir., 158 F.2d 900, 907, and cases cited in Notes 13, 14, 15 and 16, thereof.

17 Webster's New International Dictionary, 2d Ed.; Blythe v. Doheny, 9 Cir., 73 F.2d 799, 803.

18 Finlay v. King, 3 Pet. 346, 376, 377, 7 L.Ed. 701; In re Assessment of Alleged Omitted Property, 177 Okl. 74, 58 P.2d 134, 136; Wellsville Oil Co. v. Miller, 44 Okl. 493, 145 P. 344, 348.

have been useless to Pipe Line Company without the certificate from the Commission. It is reasonable to assume that the state and municipalities would not desire to grant local authorizations until Pipe Line Company had obtained from the Commission a certificate for the construction and operation of the pipe line. Likewise, lease agreements between Pipe Line Company and Michigan Consolidated could not be finally entered into until Pipe Line Company had obtained from the Commission a certificate for the construction and operation of the pipe line.

■ The Act does not require the Commission to approve the plan of financing. The American Light and Traction Company, the parent of Pipe Line Company, was a regulated holding company and, therefore, it was necessary to secure the approval of Pipe Line Company's proposed plan of financing by the Securities and Exchange Commission under the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79 et seq. But, it was not a prerequisite that such approval should be obtained from the Securities and Exchange Commission prior to the issuance of the certificate. Both such certificate and approval were mutually necessary to the other, but it was not essential that they be obtained simultaneously.[19]

■ It was not necessary that Pipe Line Company's rate schedule be approved before the issuance of the certificate. Under the Act, the Commission had power from time to time to examine and reexamine rate schedules and determine just and reasonable rates and charges. Had a rate schedule been approved at the time of the issuance of the certificate, it would have been subject to change thereafter.

It is our conclusion that none of the conditions above referred to were conditions precedent to the issuance of the certificate and that they were conditions to be fulfilled after its issuance.[20]

The Act expressly authorizes the Commission to "determine the service area to which each authorization" under the cer-

tificate of public convenience and necessity is to be limited. The contracts did not provide for a certificate of public convenience and necessity for the construction of a pipe line to, and the operation thereof in, the Detroit and Ann Arbor service areas. The requirement of the contracts was a certificate for the construction and operation of a pipe line from the designated point in Texas to Wisconsin and Michigan, or either of them, and intermediate points. Such requirement would have been fulfilled had the Commission entirely excluded the Detroit and Ann Arbor service areas, notwithstanding such areas will provide a very substantial part of the market for the gas which Pipe Line Company will transport and resell.

The Commission attached to its certificate a general condition with respect to the Detroit and Ann Arbor areas, namely, that the transportation of gas for or sale to Michigan Consolidated for resale in the Detroit and Ann Arbor service areas should be with due regard to the rights and duties of Panhandle in such areas, to be thereafter determined by supplemental order on the basis set forth in paragraph (B) (viii) (1), (2), and (3) of its order of November 30. Here, again, we do not think the condition imposed was precedent to the issuance of the certificate, but rather, a condition subsequent with respect to such service areas, to be more particularly defined on the basis stated by supplemental order of the Commission. Plainly, the condition imposed was not one with respect to the issuance of the certificate, but with respect to the future exercise of rights granted under the certificate.

Section 717r of the Act provides that a petition for rehearing may be applied for within thirty days after the issuance of an order. If the Commission intended, as it seems clear to us that it did, to issue a certificate effective on November 30, 1946, but, by the provisions of paragraph (C), intended to extend the time generally for filing a petition for rehearing beyond the period of thirty days from November 30, 1946, and until its supplemental opinion and

[19] See Panhandle Eastern Pipe Line Co. v. Federal Power Commission, D.C. Cir., 169 F.2d 881, 883.

[20] Panhandle Eastern Pipe Line Co. v. Federal Power Commission, D.C.Cir., 169 F.2d 881.

order with respect to the Detroit and Ann Arbor service areas had been filed, then it may be doubted that paragraph (C) is valid.

■ It seems obvious to us that the Commission did not intend, by paragraph (C), to undertake to extend the time for filing a petition for rehearing other than with respect to the limitations imposed with respect to the Detroit and Ann Arbor service areas by paragraph (B) (viii), to be more particularly defined by supplemental order. If such was the intention of the Commission, paragraph (C) is valid, and, since the matters reserved had to do, not with the issuance of the certificate, but with the future exercise of rights granted thereunder, paragraph (C), so construed, does not conflict with the prior language of the order indicating an intent on the part of the Commission to issue a certificate immediately effective.

■ In the Act, the terms "issued" and "granted" are used synonymously. Section 717f(e) of the Act provides that if such findings are made "a certificate shall be issued." We hold that the issuance of a certificate constitutes a grant thereof.

■ The Skelly contract of December 5, 1945, gave Skelly the right to terminate such contract by written notice to Phillips "at any time after December 1, 1946, or before the issuance of such certificate." The contracts with Stanolind and Magnolia contained like provisions. It is to be noted that such contracts did not provide "before the issuance" and "acceptance" of such certificate. Accordingly, we conclude that if the certificate was issued on or before December 1, 1946, right to terminate did not inure, although acceptance was subsequent to that date.

The instant action was filed July 15, 1947. On May 20 and 21, 1947, respectively, Skelly and Stanolind filed separate actions in the district court of Travis County, Texas, against Phillips, in which each sought a declaratory adjudication that its contract with Phillips had been terminated and that it was no longer obligated by its contract. Both actions were removed by Phillips to the United States District Court for the Western District of Texas. Skelly interposed a motion to dismiss or abate the instant action because of the pendency of its prior action brought in the state court of Texas. Stanolind interposed a like motion.

■ The actions brought by Skelly and Stanolind sought only a personal judgment and were actions in personam. It is well settled that where two actions involving the same cause of action are pending in a state and Federal court, and are within the concurrent jurisdiction of each, both actions, in so far as they seek relief in personam, may proceed at the same time, and, when one action has gone to final judgment, that judgment may be set up as a bar in the other action under the doctrine of res judicata.[21]

■ The controversy was not one which could be better settled in the actions brought by Skelly and Stanolind. Magnolia was not a party to those actions. The controversy could be adjudicated as to all of the parties in interest in the instant action. The controversy involves the construction and application of Federal law. The entire controversy can be determined more conveniently and with more facility in the instant action.[22]

We conclude that the trial court did not abuse its discretion in overruling such motions.

Affirmed.

---

[21] Guardian Life Ins. Co. of America v. Kortz, 10 Cir., 151 F.2d 582, 585; Wells v. Helm, 10 Cir., 105 F.2d 402, 404; Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 465, 466, 59 S.Ct. 72, 83 L.Ed. 366; Penn General Casualty Co. v. Commonwealth of Pennsylvania, 294 U.S. 189, 195, 55 S.Ct. 386, 79 L.Ed. 850; Kline v. Burke Construction Co., 260 U. S. 226, 230, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077.

[22] Franklin Life Ins. Co. v. Johnson, 10 Cir., 157 F.2d 653, 656, 657. Cf. Brillhart v. Excess Ins. Co., 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620.